**KNEUPPER & COVEY, PC**
Kevin Kneupper, Esq. (CA SBN 325413)
kevin@kneuppercovey.com
4475 Peachtree Lakes Dr.
Berkeley Lake GA 30096
Tel:512-420-8407

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULES VANDEN BERGE, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>CHRISTOPHER MASANTO, ANDREW MASANTO, ALTITUDE ADS LIMITED, BLOOMING INVESTMENTS LIMITED, and AMPLIFY LIMITED<br><br>        Defendants | Case No.: **'20 CV0509 H   BGS**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) Violation of California's Consumer Legal Remedies Act;<br>(2) Violation of California's False Advertising Law;<br>(3) Violation of the Unfair and Fraudulent Prongs of California's Unfair Competition Law;<br>(4) Violation of the Unlawful Prong California's Unfair Competition Law;<br>(5) Civil RICO;<br>(6) Violation of Various Consumer Protection Laws;<br>(7) Aiding and Abetting;<br>(8) Civil Conspiracy.<br><br>**DEMAND FOR JURY TRIAL.** |

Plaintiff JULES VANDEN BERGE, individually, and on behalf of all others similarly situated nationwide and in the State of California, by and through their undersigned counsel, hereby files this Class Action Complaint against Defendants, CHRISTOPHER MASANTO, ANDREW MASANTO, ALTITUDE ADS LIMITED ("Altitude Ads"), BLOOMING INVESTMENTS LIMITED ("Blooming Investments"), AMPLIFY LIMITED d/b/a Amplify Products, Amplify Limited Inc., and Amplify Media Inc. ("Amplify Limited"), collectively the "Cel MD Defendants," and allege as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter because this is a class action in which, on information and belief, the damages exceed $5 million, exclusive of interest and costs, the number of class members exceeds 100, and as demonstrated below, the parties are diverse pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

2.     This court also has jurisdiction because Plaintiff's Racketeer Influenced and Corrupt Organizations Act ("RICO") claim, 18 U.S.C. §§ 1961, *et seq.*, arises under federal law.

3.     This Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367.

4.     This Court has personal jurisdiction over Defendants because Defendants are authorized to conduct and do business in California, including this District. Defendants marketed, promoted, distributed, and sold their products in California, and Defendants have sufficient minimum contacts with this State and/or sufficiently availed themselves of the markets in this State through their promotion, sales, distribution, and marketing within this State, including this District, to render the exercise of jurisdiction by this Court permissible.

5.     The Defendants purposely directed their activities towards California.

6.     Defendants committed intentional acts by running websites from at least 2017 through the present accessible to California residents with knowledge that California residents would purchase and were purchasing from those sites; by targeting California residents with advertisements; by registering to do business in California; and by shipping products to California residents.

7.     These intentional acts were expressly aimed at California residents. The Defendants targeted their conduct at California residents, including the Plaintiff, and knew they were California residents by virtue of their shipping addresses and other contact information. These acts involved ongoing, systemic, and continuous contact with

California because the shipment of Cel MD Products occurred from at least late 2017 through the present, a nearly three-year period. Those shipments often occurred as part of subscriptions, meaning that the Defendants shipped continually and regularly to their California customers over long periods of time. The acts were entirely commercial in nature, as the Defendants profited from selling the Cel MD Products.

8.      The Defendants generated substantial profits from their acts aimed at California residents. They placed the Cel MD Products into the stream of commerce, knowing and intending that they would be advertised over the Internet to California residents and purchased by California consumers.

9.      The Defendants knew or should have foreseen that their actions would cause harm in California. As described herein, they intentionally ran advertising claiming to have an advanced plant stem cell formula over a lengthy period of time. They knew that California consumers were being harmed. Had they not done so, the California consumers would not have been harmed because the Cel MD Products would not have been shipped to them and the consumers would not have seen the false representations described herein.

10.     On information and belief, Defendant Andrew Masanto was aware that Cel MD products were being advertised and sold in California on an ongoing basis, and took specific actions to encourage these sales and activities in his role as co-founder and head of the New York branch of Altitude Ads, through at a minimum advice, general assistance, and financial assistance. Defendant Christopher Masanto likewise was aware of this, and specifically directed these advertisements and sales in his role as CEO of Altitude Ads and personally registered Amplify Limited to do business in California.

11.     Because of these facts, personal jurisdiction is appropriate in California over the Defendants.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events giving rise to Plaintiffs' claims occurred while they resided in this judicial district, and because the Defendants have registered to do

business in California. Venue is further proper as to Defendants Christopher Masanto, Altitude Ads, and Blooming Investments under 28 U.S.C. § 1391(c)(3) because they do not reside in the United States.

## NATURE OF THE ACTION

13.    Cel MD is a line of hair loss and skin care products which—if the Cel MD Defendants are to be believed—is nothing short of miraculous. The products purport to use plant stem cells (in particular, stem cells grown in a Korean laboratory from ginseng and asparagus) to cure hair loss and skin problems. These products are sold directly to consumers via the Cel MD website (cel.md) and via Amazon.com, and have been since at least April 2018 through the present.

14.    The Cel MD Defendants claim to their customers that they have created a "patented and expertly refined plant stem cell formula."[1] This has resulted in the creation by Cel MD of various miracle "plant stem cell" products designed to either improve skin or that are "scientifically proven to effectively combat hair thinning and loss."[2] The Cel MD Defendants describe their product development as follows: "Partnering with beauty experts in South Korea, our specialised Nanotech formula was optimised for your own home-use."[3]

15.    Cel MD represents that its shampoo and conditioner was created by various scientific experts: "Created by US Stem Cell Experts, and perfected for your own home-use, by Nanotech beauty experts in Seoul, South Korea. Cel's patented Shampoo & Conditioner is the most advanced haircare product available that will help you fight hair thinning and grow stronger, healthier hair."[4]

16.    Similarly, Cel MD claims of its skin care products: "Our powerful, patented healing formula is scientifically proven to promote healthy looking skin."[5] The Cel MD

---

[1] Cel.Md, https://www.cel.md/pages/cel-science (last visited June 17, 2019).
[2] Cel.Md, https://www.cel.md/products/cel-shampoo-conditioner (last visited June 17, 2019).
[3] *Id.*
[4] *Id.*
[5] Cel.Md, https://www.cel.md/products/cel-mask (last visited July 9, 2019).

Defendants claim to "use plant stem cells to help renew your skin cells, brighten and tighten your complexion and soothe dry, irritated skin."[6]

17.    But Cel MD is no miracle. These products are nothing more than modern snake oil, promising results that are impossible to deliver given the nature of their ingredients. Much of the marketing of these products amounts to science fiction. All of Cel MD's customers are told that "plant stem cells" will help cure their hair and skin products—an avenue of research that some believe may come true in a few decades. But none of their customers are told the truth—that while Cel MD may use "plant stem cells" in their products, those cells have been turned into extract: they are not living and have been processed in ways that kill off the cells, making it impossible for the cells to function in the way some scientists theorize a living plant stem cell could. Rather than use this futuristic technique, the Cel MD Defendants are at best growing plant biomass as part of a common manufacturing technique. Any "plant stem cells" they use are dead or have been destroyed and cannot benefit hair or skin by virtue of being "stem cells."

18.    The "MD" in the name Cel MD would imply to the ordinary person that the Cel MD Defendants are either doctors or a medical practice. In fact, it is unlawful in California to use these initials without being a licensed medical doctor because it may falsely suggest otherwise. But in the name Cel MD, the "MD" actually stands for Moldova—the country from which the Cel MD Defendants purchased their domain name, and a country to which these Defendants have no other connections whatsoever. The Cel MD Defendants are not a medical practice. They are an advertising agency that launched its own proprietary products. Yet online, they pose as doctors, frequently giving medical advice to cancer patients and individuals who have suffered hair loss from serious medical procedures such as chemotherapy or brain surgery. And that medical advice is invariably to try Cel MD's products.

---

[6] *Id.*

19.     The Cel MD Defendants have engaged in pervasive dishonesty throughout their advertising materials. They have photoshopped their products onto pictures of beauty bloggers and models, falsely claiming that those bloggers and models endorsed them. They have used photos of their own employees or stock photos from the Internet as "customer photos." They have told science fiction tales of operating a human stem cell cloning facility, of having developed "super skin," "super bacteria," and "super biotin." They claimed their products have FDA approvals, when in fact they do not. They utilize fake timers on their website which purport to limit the availability of discounts, when in fact those timers do nothing whatsoever. They tell customers that there is a limited supply of their products so that there is great urgency in purchasing them before they run out—and they have been telling them this same tale of imminent future shortages for over a year.

20.     Perhaps most gallingly, the Cel MD Defendants have long been aware that ingredients in their products cause allergic reactions in some customers. There have been numerous reports of scalp burns, of rashes, of hair falling out, and other serious side effects. Yet the Cel MD Defendants did nothing to address it and issued no warnings to their customers. Instead, they actively targeted customers with hair loss from serious medical issues such as brain surgery or cancer. Posing as a medical practice under the name "Cel MD," these advertising agents urged the seriously ill to try their products as a potential remedy. With no medical expertise, no knowledge of how their products would interact with these customers' ongoing treatments, and knowing only that their products could cause severe allergic reactions, the Cel MD Defendants went ahead and recommended them anyway.

21.     The Defendants could have killed someone. Their actions were reckless to the point of being horrifying. To treat the most vulnerable among us as an economic resource to be harvested is appalling. And yet all of their customers were treated this way—not as people but as victims to be lied to, hyped, and told whatever it took to close the sale. This conduct must be stopped—and it must be severely punished.

## THE PARTIES

### Plaintiffs

22.     **Plaintiff Jules Vanden Berge** is a citizen of California residing in Vista, CA. In roughly February of 2019, Plaintiff Vanden Berge signed up for a subscription for Cel MD's shampoo and conditioner products on the Cel.md website. On February 28, 2019, her credit card was billed two charges of $19.95 and $51.95 attributed to "CEL MD NEW YORK GB." On March 30, 2019, Plaintiff Vanden Berge was sent an invoice for the "Microstem Cell Thickening Conditioner" and "Microstem Cell Thickening Shampoo" from Cel MD. On March 31, 2019, she was again billed $51.95 by Cel MD.

23.     Plaintiff Vanden Berge is a cancer survivor who donates her hair to help patients undergoing chemotherapy. She purchased the Cel MD products in reliance on the Defendants' representations in their Facebook advertisements and on their website that these products would improve her hair quality and growth, hoping that it would enable her to donate more hair to those suffering from cancer.

24.     After using the Cel MD products for several months, she noticed no difference and realized that the products were ineffective. She contacted Cel MD to cancel her subscription and attempted to get a refund, but was treated rudely by their customer service representatives and was not given the refund she requested. She felt as if the Cel MD customer service representatives were falsely suggesting that she had signed up for a long-term contract and made her feel threatened about canceling her subscription.

### The Cel MD Defendants

25.     **Defendant Christopher Masanto** is a citizen of Australia residing in London, United Kingdom. Christopher Masanto is the CEO and Director of Altitude Ads Limited, the owner and Director of Blooming Investments Limited, and the CEO and Secretary of Amplify Limited. According to Christopher Masanto's LinkedIn profile, in his position at Altitude Ads he "leads a talented team of internet marketers who specialise

in advertising products and services online at scale."[7] One of those is the Cel MD line of products, which Christopher Masanto states on his LinkedIn profile was created by himself and Altitude Ads in April 2018. Defendant Christopher Masanto signed the documents filed with the California Secretary of State on behalf of Amplify Limited to do business in California.

26.     **Defendant Andrew Masanto** is a citizen of Australia residing in New York, NY. Andrew Masanto describes himself in his biography as "a serial entrepreneur, having founded Altitude Shoes (sold in 2012), Higher Click SEO Agency (sold in 2013), Altitude Ads (ongoing) and then Co-Founding Hadera Hashgraph in 2017."[8]

27.     In 2010, Andrew Masanto began a blog called "Not Your Average Lawyer" in which he chronicled his business endeavors and his efforts to leave the law.

28.     Andrew Masanto wrote public posts on his blog providing career advice to his brother, Christopher Masanto.[9] On information and belief, Andrew Masanto played this role of advisor to his brother with respect to Altitude Ads and Cel MD.

29.     In 2014-2015, Andrew Masanto created a skin care company called Royal Dermatological Foundations, incorporated as RDF LLC ("RDF"). The RDF website states that "Entrepreneur Andrew Masanto started RDF LLC with an idea that the latest, cutting-edge, skincare technology should be made available to the public through the power and convenience of the internet."[10] The site states that "[h]aving run numerous successful online businesses in the UK, Andrew saw the opportunity to use his skills in internet marketing to make a move into the skincare industry, but with an internet marketing twist.... Utilizing industry contacts from his former businesses, Andrew set out to learn and understand as much as he could about the skincare industry and

---

[7] LinkedIn, https://uk.linkedin.com/in/christopher-masanto-56088a4a (last visited June 18, 2019).
[8] Reserve, https://reserve.org/our-team (last visited June 22, 2019).
[9] Andrew Masanto, How to Choose What Business to Start: Eating the Right Pie, https://web.archive.org/web/20160821092420/http://www.notyouraveragelawyer.com/how-to-choose-what-business-to-start/ (last visited Oct. 20, 2019).
[10] RDF Website, http://www.rdfcompany.com/about.html (last visited July 31, 2019).

marketplace.... Andrew quickly expanded the team and RDF LLC now includes two talented American team members - Andrew Yeoh and Alex Page. Together, the three have set out to research and create products that utilize the most cutting edge materials in global skincare, leveraged by online distribution."[11] The RDF website lists two products in development—an "aging serum" designed to be applied to the skin, and an "advanced eye repair cream." Cel MD has created similar products, the Nanotech Stem Cell Face Mask and its Eye Serum.

30.     While RDF appears to have never gotten off the ground, by 2018 Andrew Masanto was clearly involved in Cel MD. He describes himself in his biography as having "founded" Altitude Ads, the parent company and creator of Cel MD.[12] He has conducted hiring on behalf of Altitude Ads and had access to the Altitude Ads LinkedIn account, posting an advertisement on LinkedIn for a personal assistant to work for Altitude Ads in New York City.[13] In the advertisement, Andrew Masanto describes himself as one of "[t]he Founders of the successful advertising companies Jump 450 and Altitude Ads (NYC branch)...."[14] The advertisement was posted in roughly June-July 2018, which coincides with the launch of Cel MD in April 2018 and its subsequent ramp-up. Cel MD is the primary product line of Altitude Ads. On information and belief, Andrew Masanto operates the New York branch of Altitude Ads through the Delaware corporation Amplify Limited. Andrew Masanto's resume features extensive experience in Internet marketing, including lecturing on online marketing at Harvard Business School.[15] Andrew Masanto also previously founded a similarly-named company called Altitude Shoes, an online shoe marketing company that also operated out of the United Kingdom.[16] On information and belief, Andrew Masanto was involved creating and

---

[11] *Id.*
[12] Reserve, https://reserve.org/our-team (last visited June 22, 2019).
[13] LinkedIn, https://www.linkedin.com/jobs/view/personal-assistant-at-altitude-ads-744634627/ (last visited June 22, 2019).
[14] *Id.*
[15] LinkedIn, https://www.linkedin.com/in/andrewmasanto (last visited June 22, 2019).
[16] *Id.*

developing the Cel MD and its marketing materials. This is supported by his background and experience, his interest and work in founding a nearly-identical skin care company just a few years before Cel MD, the timing of his hiring activities on behalf of Altitude Ads, the corporate structure of the companies which are based in New York (where Andrew Masanto lives) and London (where Christopher Masanto lives), and his publicly acknowledged role as co-founder of Altitude Ads and his role in operating the New York branch of Altitude Ads, whose only apparent activities in that time frame involve Cel MD. On information and belief, Andrew and Christopher Masanto are brothers, and they cooperated together in creating and promoting Cel MD after Andrew Masanto's RDF skin care venture failed.

31.     **Defendant Altitude Ads Limited ("Altitude Ads")** is a United Kingdom corporation with a registered address of: c/o Buzzacott LLP, 130 Wood Street, London, United Kingdom, EC2V 6DL. Defendants Blooming Investments Limited and Christopher Masanto are listed as the owners, operators, or beneficiaries in interest of Altitude Ads in its corporate documents. Altitude Ads lists Cel MD on its website under the banner "Our Brands" along with photos of the products and a link to the Cel MD website. Altitude Ads further includes a description above the pictures of Cel MD stating "Our aim is to take incredible ideas, turn them into tangible brands, and use our expertise to grow those brands into profitable businesses. Here are some of our most recent launches."[17] Christopher Masanto states on his LinkedIn profile that "Altitude Ads has created some of the fastest growing direct to consumer brands in Europe. One of which is Cel MD...."[18] The Cel MD website states that "Amplify is solely owned by Altitude Ads Ltd."[19]

---

[17] Altitude Ads, https://www.altitudeads.com/ (last visited June 19, 2019).
[18] LinkedIn, https://uk.linkedin.com/in/christopher-masanto-56088a4a (last visited June 18, 2019).
[19] Cel MD Website, https://www.cel.md/pages/terms-conditions (last visited July 9, 2019).

32.      **Defendant Blooming Investments Limited ("Blooming Investments")** is a United Kingdom corporation with a registered address of: c/o Buzzacott LLP, 130 Wood Street, London, United Kingdom, EC2V 6DL. Defendant Christopher Masanto is listed as the owner, operator, or beneficiary in interest of Blooming Investments Limited in its corporate documents. Blooming Investments Limited is listed in the corporate documents of Altitude Ads as owning more than 75% of Altitude Ads and being a "person with significant control."

33.      **Defendant Amplify Limited** is a Delaware corporation with a registered address of: 310 Alder Rd PO BOX 841, Dover, DE 19904. Amplify Limited is registered to do business in California under the name "Amplify Products," with a listed address of 1375 Broadway, 15th Floor, New York, NY. Defendant Christopher Masanto is the Chief Executive Officer and Secretary of Amplify Limited, as reflected in its corporate filings as a foreign corporation doing business in California and Florida. In its Florida filings, Amplify Limited refers to itself as "Amplify Limited Inc.," and is registered to do business in Florida as "Amplify Media Inc." The Cel MD website states that it "is operated by Amplify LTD."[20] The product packaging for the Cel MD products likewise lists their company name as "Amplify LTD."

34.      Together Defendants Christopher Masanto, Andrew Masanto, Altitude Ads Limited, Blooming Investments Limited, and Amplify Limited ("the Cel MD Defendants") created, own, operate, and control the Cel MD brand, website, and business operations. Together they manufacture, advertise, market, distribute, and/or sell the Cel MD products to thousands of consumers in California and throughout the United States, and have done so from roughly September 27, 2017 (when they launched their Facebook page as "Stem Cell MD") through the present.

### **The Cel MD Joint Venture**

---

[20] Cel.Md, https://www.cel.md/pages/terms-conditions (last visited June 19, 2019).

35.     The Cel MD Defendants formed a joint venture, and each of the members of that joint venture, as well as the joint venture itself, are jointly and severally liable for the wrongful conduct of any members acting in furtherance of the venture.

36.     Defendants Christopher Masanto, Andrew Masanto, Altitude Ads Limited, Blooming Investments Limited, and Amplify Limited combined their property, skill, and knowledge with the intent to carry out a single business undertaking. That business undertaking was the Cel MD brand and website, led by Christopher Masanto (who ultimately owns and controls the three other corporate entities) and Andrew Masanto (who on information and belief directs the United States operations of the joint venture).

37.     Each of the Cel MD Defendants has an ownership interest in the joint venture. Christopher Masanto is the ultimate owner of the group of companies according to their corporate filings in the UK. On information and belief, in his role as "co-founder" Andrew Masanto is entitled to an ownership interest. Such agreement is further implied by the members' conduct in creating and controlling the Cel MD brand and website, as well as by the statements on the Cel MD Defendants' websites and LinkedIn pages.

38.     On information and belief, the Cel MD Defendants have joint control over the business, or agreed to delegate that control. Such control is implied by the member's conduct because Christopher Masanto is ultimately the owner and the CEO of Altitude Ads, Amplify Limited, and Blooming Investments Limited, and by Andrew Masanto's exercise of the power to hire employees on behalf of Altitude Ads and his control over the Altitude Ads LinkedIn account.

39.     The Cel MD Defendants have an agreement to share the profits and losses of the joint venture. Such agreement is implied by the members conduct because of the overlapping corporate ownership and decision-making structure, as well as the various statements on their websites and LinkedIn pages.

## FACTUAL ALLEGATIONS
### Deceptive Brand Name and
### Omissions Regarding the Cel MD Brand Name

40.     The Cel MD Defendants use the brand name "Cel MD" as an overall brand for marketing their products. All of the products are sold on the Cel.md website or using the Cel MD name on Amazon.com. The Cel MD Defendants' Facebook advertisements were all labeled as from "Cel MD" until roughly July-August 2019, and the title of their Facebook page was Cel MD. At some point this was changed, but the Facebook URL remains "celmdbeauty" and the product is still described as Cel MD on the page. Since that time, the Cel MD Defendants have maintained Facebook advertising accounts with titles such as "Cel MD Offers" or "Cel MD Results," and are presently advertising under those names. The Cel MD Defendants' Instagram page is titled "celmd.beauty" and this is featured prominently as the name at the top of the page.[21] The Cel MD Defendants' Youtube page is titled "Contact Stem Cell MD Tech," and the names for the vast majority of the advertising videos they have uploaded (which are embedded into their website and viewable there) begin their titles with the words "Cel MD."[22] On information and belief and given the structure of their websites and sales funnels, every customer of the Cel MD products would have been exposed to and viewed the "Cel MD" brand name.

41.     The "MD" portion of this brand name is deceptive or misleading to consumers because it falsely implies to consumers that medical doctors, or "M.D.'s," are selling the Cel MD products. "MD" is commonly known as an abbreviation used by doctors to signify their educational training and achievement, or as part of the name of a medical practice.

42.     In the context of Cel MD's website, however, MD is an abbreviation for the country of Moldova. On information and belief, the Cel MD Defendants have no connection to the country of Moldova. Based on representations on the packaging of the Cel MD products, those products are not made in Moldova, were not designed there, and on information and belief the only connection between Cel MD and Moldova is that the

---

[21] Cel MD Instagram, https://www.instagram.com/celmd.beauty/?hl=en, (last visited June 23, 2019).
[22] Cel MD Youtube Page, https://www.youtube.com/channel/UCrQoAp3iHHr-ZEAXG50d0Aw/videos, (last visited June 23, 2019).

Defendants chose to purchase a domain from that country. There do not appear to be any references anywhere on the Cel MD website to Moldova other than the use of the MD abbreviation.

43.     The Cel MD Defendants have repeatedly used the "MD" portion of their name to suggest to consumers that they are medical doctors. For example, in a page on the Cel MD website containing fake reviews from customers attributed to photos of a model and a photo lifted from a woman in a "cougar" meme, the Cel MD Defendants portray the page as an article written by "Ryan Connor, Stem Cell MD."[23] But on information and belief, just like the fake reviews, Ryan Connor is not in fact a doctor and is instead a pseudonym for a Cel MD employee. The page attributes glowing quotes to an unnamed doctor: "One doctor put it best saying 'with these masks you get the powerful skin healing properties of stem cells, without the ethical dilemma of using real human stem cells. A brilliant invention.'"[24] But just as the customer quotes on this page can be proven fake by a simple Google reverse image search, on information and belief this quote from a "doctor" was faked by the Cel MD employees as well. The page also claims that the Cel MD mask was developed by a "NY based stem cell expert"—but again, the identify of this "expert" is never disclosed.[25]

44.     On information and belief, the Cel MD Defendants chose the "MD" abbreviation to deliberately suggest to consumers that their products were sold by a medical practice. The Cel MD Defendants registered a domain name from the country of Moldova because URL's registered through Moldova utilize a .md country code in their domains instead of the .com code. By registering through Moldova, the website would appear as "cel.md" instead of "cel.com" or some other domain name. Many domain name suffixes are reserved for particular industries (for example, .xxx for pornography, .com and .biz for commercial enterprises, and more than 1,000 others including .dental for

---

[23] Cel.Md, https://www.cel.md/pages/why-stem-cell-md-decided-to-offer-a-free-trial-on-top-selling-product-1 (last visited July 29, 2019).
[24] *Id.*
[25] *Id.*

dentists and .doctor for doctors). Because of this common and well-known practice, a reasonable consumer would be deceived into thinking that .md was a suffix for medical doctors.

45.     The Cel MD Defendants further deceived their customers by omission by failing to disclose the information that "MD" in the URL stands for Moldova and not "Medical Doctor(s)" and for failing to disclose that they are not doctors nor are they a medical practice.

46.     The Cel MD Defendants were under a duty to disclose this information to Plaintiff and the Class Members because the Cel MD Defendants had exclusive knowledge of material facts not known to them, namely that "MD" stands for Moldova and not "medical doctor(s)" as reasonable consumers would assume.

47.     Plaintiff and the Class Members did not know this, and the information was difficult to discover because it requires expertise in domain names and their operation as well as an investigation into the qualifications of the actual people who are behind Cel MD, who are not disclosed by name on the Cel MD website and who cannot be easily located without searching corporate records (and in some instances cannot be located at all from public information).

48.     The Cel MD Defendants were under a duty to disclose this information to Plaintiff and the Class Members because the Cel MD Defendants engaged in active concealment, and have engaged in affirmative acts of hiding, concealing, or covering up this matter. The Cel MD Defendants have hidden or deleted negative comments on their Facebook ads, as evidenced by the disparity between comments listed on the ads and comments appearing on the ads. For example, on one ad, there have been 16 comments, but only 9 of those comments are publicly visible.[26] Advertisers on Facebook have the option to hide comments by customers on their ads.

---

[26] Cel MD Facebook Page, https://www.facebook.com/watch/?v=558708074666940 (last visited June 21, 2019).

49.    As a specific example, a page capture taken on June 27, 2019 at of 6:09 PM Pacific time, one of the Cel MD Defendants' Facebook advertisements featured publicly visible comments by two individuals seeking to convey negative information about the Cel MD Defendants to consumers. One, by an individual named Terry Hopkins, questioned whether the Cel MD products could "actually make your hair thin out more" and specifically asked the Cel MD Defendants (who had been actively replying to customers' questions) whether that was a possibility:



50.    Another individual named Sean OReilly responded to a "before and after" photo which the Cel MD Defendants posted saying "Lol... more lies." The same individual posted several other negative comments in the thread, also informing customers that if they stopped using the products, they risked "more hair loss."

51.    By the following morning, on June 28, 2019 as of 11:55 AM Pacific time, these comments had been hidden or deleted by the Cel MD Defendants and were no longer visible to the public. On information and belief, they were hidden rather than deleted, since the number of comments listed on the advertisement had gone up from 285 to 301 even as fewer comments were publicly visible.

52.     In aggregate, there are more than 10,000 comments listed across the Cel MD Defendants' various Facebook advertisements, which millions of people have been exposed to. On information and belief, the Cel MD Defendants have actively hidden numerous comments on their Facebook advertisements using the "Hide Comment" feature in order to suppress negative information about their products and to prevent potential customers from discovering it. These hidden comments remain accessible to the Cel MD Defendants, and Plaintiff expects that during discovery and upon a review of these hidden comments, further information material to this matter will be found to have been hidden, concealed, or covered up by the Cel MD Defendants.

53.     On information and belief, the Cel MD Defendants have further engaged in active concealment by hiding, concealing, or gating negative reviews on TrustPilot in order to suppress material negative information about their products and to prevent consumers from discovering it.

54.     The Cel MD Defendants were further under a duty to Plaintiff and the Class members because they made partial representations—using the term "MD" and describing themselves on their website as "innovators" who are "pioneering scientific methods" when in fact they are an advertising company—but also suppressed, concealed, or did not disclose material facts that qualify those representations, namely that they are not medical doctors, are not a medical practice, that MD in the URL stands for Moldova, and that they have no connection to Moldova.

55.     The Cel MD Defendants knew, or by the exercise of reasonable care should have known, that their omissions were untrue and misleading, and deliberately made the aforementioned omissions in order to deceive reasonable consumers like Plaintiff and other Class Members. Those omissions could have been corrected by using a different URL to host the Cel MD website and removing "MD" entirely from its name on Amazon, Facebook, on the Cel MD website, and in any other places it is used.

56.     This use of "MD" in the Cel MD name is no minor deception—it is a violation of the California laws against unauthorized practice of medicine. The Cel MD

Defendants are not physicians, surgeons, or practitioners licensed by California or any other state as medical doctors. Pursuant to Cal. Bus. & Professions Code § 2054, "[a]ny person who uses in any sign, business card, or letterhead, or in an advertisement... the initials 'M.D.,' or any other terms or letters indicating or implying that he or she is a physician and surgeon, physician, surgeon, or practitioner under the terms of this or any other law... is guilty of a misdemeanor." The Cel MD Defendants' conduct is thus unlawful under the California Unfair Competition Law.

57.    The Cel MD Defendants' misrepresentations and omissions regarding their brand name were material to consumers. A reasonable consumer would attach importance to the truth or falsity of these misrepresentations and omissions in deciding whether to purchase the Cel MD products because had they known that Cel MD was not a medical practice and was not run by doctors, and that in fact the "innovators" were an advertising agency staffed primarily by digital marketing specialists with no medical degrees, consumers would not have purchased the Cel MD products or would not have paid as much for those products. Plaintiff and the Class members thus reasonably relied upon these representations in making their purchase decisions.

### Omissions Regarding Reviews and Endorsements

58.    Customer reviews, testimonials, videos, and photographs that purport to come from happy customers pervade the Cel MD Defendants' marketing materials. In their Facebook advertisements, in their Youtube pages, on the Cel.md website, and on the Amazon website, these endorsements are present. On information and belief, and based on the structure of the Cel.md sales funnels and websites, every customer who purchases a product from Cel.md would have been exposed to and view at least one of these endorsements at least through roughly October 2019.

59.    The Cel MD Defendants' website utilizes customer reviews throughout the site—often associated with photographs of what purport to be real customers who have given gushing reviews of the Cel MD products. But many of the photos are not in fact

real customers. Instead, they are stock photos of models who have no connection whatsoever with the Cel MD Defendants or their products.

60.    For example, a photo purporting to be of a customer named "Rachel T." who made a "Verified purchase" and gave Cel MD's shampoo and conditioner a five-star review features a vibrant-looking woman with a full head of hair:[27]



★ ★ ★ ★ ★

Rachel T. Verified purchase

My hair has transformed. It feels and looks
healthier.

61.    But this photo originated from a stock photo website called Shutterstock, which offers licenses to an identical photo of a model who, on information and belief, has no associations with Cel MD and has never used or purchased any Cel MD products:[28]

---

[27] Cel.Md, https://www.cel.md/collections/hair-growth (last visited June 18, 2019).
[28] ShutterStock, https://www.shutterstock.com/image-photo/portrait-happy-middle-age-woman-man-143147341?src=FiCnNnqogTELUI08x6atlQ-1-51&studio=1 (last visited June 18, 2019).



62.   In some cases the same photos are presented on different parts of the Cel MD Defendants' website as being different verified customers with different names who gave different reviews. For example, "Pam W." purportedly is a customer who reviewed Cel MD's eye serum:[29]



★ ★ ★ ★ ★

Pam W. Verified purchase

I had bags beneath my eyes and within 2 weeks the bags are half their size. Can't wait to see what 2 more weeks will bring.

---

[29] Cel.Md, https://www.cel.md/collections/stem-cell-eye-serum (last visited June 18, 2019).

63.     But "Pam W." uses the same photo as "Sylvia F.," who purportedly is a customer who reviewed Cel MD's hand cream:[30]



★ ★ ★ ★ ★

Sylvia F. Verified purchase

Love this product, I've gifted it to all my
friends this Christmas!

64.     Similarly, "Barbara D." gives a glowing review of Cel MD's eye serum:[31]



★ ★ ★ ★ ★

Barbara D. Verified purchase

I like the way it goes on. I put it on right
before bed, on upper lashes only, so when
my eyes are closed, the bottom lashes are
touching. I've only been using it a week
and so far so good

65.     "Barbara D." makes another appearance under the name "Janet R." to give a similarly enthusiastic endorsement of Cel MD's hand cream:[32]

---

[30] Cel.Md, https://www.cel.md/collections/stem-cell-hand-cream (last visited June 18, 2019).
[31] Cel.Md, https://www.cel.md/collections/stem-cell-eye-serum (last visited June 18, 2019).
[32] Cel.Md, https://www.cel.md/collections/stem-cell-hand-cream (last visited June 18, 2019).



★ ★ ★ ★ ★

Janet R. Verified purchase

I've struggled with over-washed, dry
hands for so long and FINALLY a hand
cream that works!!

66.   On another page in which a Cel MD employee claims to be a medical doctor, two photos lifted from other parts of the Internet are used with fake reviews attributed to them, portraying the two women as customers named "Charlotte" and "Ashleigh:"[33]



---

[33] Cel.Md, https://www.cel.md/pages/why-stem-cell-md-decided-to-offer-a-free-trial-on-top-selling-product-1 (last visited July 29, 2019).

67.    In fact, the photo of "Charlotte" appears to have been taken from a "cougar" meme website[34] where it appears in a more complete form (meaning the cropped photo on the Cel MD site could not be the original source because the second photo contains additional imagery of the individual pictured):



68.    As for "Ashleigh," the photo is in fact of a model named Yasmina Rossi who has no apparent connection to the Cel MD Defendants.[35] The same photo of Yasmina Rossi that the Cel MD Defendants claim is a customer named "Ashleigh" appears in larger form and is publicly available on Pinterest and various other sites.[36]

69.    In other instances, the Cel MD Defendants have photoshopped their own products onto pictures of random individuals from the Internet, falsely representing to consumers that they are customers. For example, beneath a headline stating "WHAT

[34] MemeBomb.net, https://memebomb.net/mother-in-law-meme-1/ (last visited July 29, 2019).
[35] Yasmina Rossi Instagram, https://www.instagram.com/yasmina.rossi/?hl=en (last visited July 29, 2019).
[36] Pinterest, https://www.pinterest.com/pin/472103973435459969/?lp=true (last visited July 29, 2019).

OUR CUSTOMERS ARE SAYING," the Cel MD Defendants included this photo of a "customer" who appears to be holding up a bottle of a Cel MD product:[37]



70.    But the photo is nothing but a crude photoshop—neither the hand nor the bottle are featured in the original photo of this individual, who is actually an author and journalist named Lauren Galley whose photo was stolen by the Cel MD Defendants from a Huffington Post article:[38]



---

[37] Cel MD Website, https://promos.cel.md/caxcconogift/index.php (last visited August 1, 2019).
[38] Five Reasons to Take Another Selfie, https://www.huffpost.com/entry/5-reasons-to-take-another-selfie_b_4742798?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAAMHq4NuZzMwKBHAAGxUJi9ANSB9VvA0KGqubCzCh1jib9geUegLzykM0QibzUD1Hc-JXk87yVi_CtAKkUaXkAFmGNiQSVl4gEnmDVfjtwSj1IjvJQLnbKgzYG4uufsnff8dfy0_IO_fbTOj4ppp2qA8lJUtWnDtbTrDyolUVpkVj (last visited August 1, 2019).

71.   Another photo again features a woman labeled as a "customer" holding up a Cel MD product: [39]



72.   And again, the Cel MD Defendants stole this photo, which is actually of Marianne Mychaskiw, a beauty editor and journalist who took this photo for one of her articles in InStyle Magazine and who was originally pictured holding up a Chanel product:[40]

73.   In other instances, the "customers" in photos on the Cel MD website appear to be photos of Altitude Ads employees who took photos of themselves pretending to be satisfied customers of their own products. For example, a block of "customers" on the

[39] Cel MD Website, https://promos.cel.md/caxcconogift/index.php (last visited August 1, 2019).
[40] We Put 5 Foundations to the Selfie Test, https://www.instyle.com/beauty/we-put-5-foundations-selfie-test? (last visited August 1, 2019).

Cel MD website features individuals holding up bottles of the Cel MD shampoo or conditioner products.[41] The website clearly labels them as "customers" and features reviews beneath the block of photos.



74.    But at least two of these photos are not of customers but of Altitude Ads employees. One photo bears a striking resemblance to Andrew Tickner, a Senior Graphic Designer at Altitude Ads:[42]




**ANDREW TICKNER**
*Senior Graphic Designer*

---

[41] Cel MD Website, https://promos.cel.md/dmxcspgiftbf/index.php (last visited August 7, 2019).
[42] Altitude Ads Website, https://www.altitudeads.com/ (last visited August 7, 2019).

75.     Another of the "customer" photos appears to be of Alexander Cochrane, a Media Buyer for Altitude Ads:

    

76.     In video advertisements on Facebook, Altitude Ads employees are featured as customers, when in fact they are employees posing in the breakroom of the Altitude Ads offices. Both of the "customer photos" of Mr. Tichner and Mr. Cochrane have appeared as purported customers in Facebook advertisements for Cel MD.[43]

77.     A video advertisement on Facebook for Cel MD opens on an individual applying "Stem Cell Serum" to his head, bragging about his "mindblowing results."[44]



[43] Cel MD Facebook Page, https://www.facebook.com/watch/?v=736610636755659 (last visited August 14, 2019).
[44] Cel MD Facebook Page, https://www.facebook.com/celmdbeauty/videos/2443615495914938/?v=2443615495914938 (last visited August 14, 2019).

78.    The individual appears amid a stream of photos and videos of people depicted as the "results" of the Cel MD products. In another video, the same individual is presented under what looks like a customer-written endorsement: "27 days in – And My Hairs Back" (sic).[45]



79.    But rather than a customer, the individual appears to be none other than Defendant Christopher Masanto:[46]



**CHRIS MASANTO**
*Founder & CEO*

---

[45] Cel MD Facebook Page, https://www.facebook.com/watch/?v=498179097396472 (last visited September 17, 2019).
[46] Altitude Ads Website, https://www.altitudeads.com/ (last visited August 14, 2019).

80.    Furthermore, images on the Altitude Ads Instagram account of Altitude Ads employees Alexander Cochrane and Andrew Tickner dancing in their company breakroom show an identical layout to the kitchen in which the individual in the Facebook advertisements is posing:[47]



81.    Later in one of the same Facebook videos, an individual who resembles Altitude Ads employee Jack Nicoll appears among the purported customer results (top center):[48]

[47] Altitude Ads Instagram Account, https://www.instagram.com/p/Bk5VYysAgHw/ (last visited August 14, 2019).
[48] Cel MD Facebook Page, https://www.facebook.com/celmdbeauty/videos/2443615495914938/?v=2443615495914938 (last visited August 14, 2019).



82.    Compare to a photo of Mr. Nicoll from the Altitude Ads website:[49]



83.    In another video, what appears to be the same individual featured later in this Complaint in the "Representations Regarding Limited Supply" section, who appears in a number of videos on the Cel MD website as a company spokesperson, is instead

---

[49] Altitude Ads Website, https://www.altitudeads.com/ (last visited August 14, 2019).

featured posing as an American whose hair has been "transformed."[50] But a close inspection of the background reveals that this photo again appears to have been taken in the company breakroom of Altitude Ads in London.



84.   On information and belief, many of the other "customer photos" on the Cel MD website are either of Altitude Ads employees or friends of those employees who are not actual customers. Nowhere is it disclosed that these photos are of employees or others who have been compensated.

85.   Multiple other "customer photos" have been reused on the Cel MD website with different customer names and different reviews.

86.   Many of the other images presented on the Cel MD website as being customers or reviewers who made a "Verified purchase" also appear on hundreds of other third-party websites with no connection to Cel MD—suggesting that they were also originally stock photos or stolen from other individuals. On information and belief, the Cel MD Defendants or their agents purchased these stock photos or obtained them from third party websites, falsely labeled them as actual customers, and wrote many of the "reviews" on their website themselves.

87.   The appearance associated with the reviewers is material to Cel MD's customers and their decision to purchase the products at issue. Because these fake photos

---

[50] Cel MD Facebook Page, https://www.facebook.com/watch/?v=289061205112777 (last visited August 14, 2019).

are of individuals with the kind of healthy, vibrant hair and perfect skin that Cel MD is selling to its customers as the primary benefits of its products, portraying reviews as coming from these individuals misleads Cel MD customers as to the kinds of results they may expect from using the products.

88.     Cel MD also utilizes a website called "TrustPilot" to display reviews on its own website, and it frequently touts its high scores in advertisements. In an interview with The Guardian, TrustPilot acknowledged that there is a widespread "black market" for fake reviews on its website.[51]

89.     As of June 2019, the reviews for Cel MD on TrustPilot were almost universally positive, with 95% of reviewers giving Cel MD a 5-star rating:[52]



90.     By contrast, on Amazon in the same time period, Cel MD's shampoo and conditioner products managed a mediocre 3.7 rating, with a full 20% of reviewers giving the products the lowest possible 1 star rating:[53]

---

[51] Mike Deri Smith, "Fake Reviews Plague Consumer Websites," *The Guardian* (online, Jan. 26, 2013), https://www.theguardian.com/money/2013/jan/26/fake-reviews-plague-consumer-websites (last visited June 18, 2019).
[52] TrustPilot, https://uk.trustpilot.com/review/cel.md?page=3 (last visited June 18, 2019).
[53] Amazon.com, https://www.amazon.com/CEL-MD-Thickening-Conditioner-Stimulating/dp/B07D7HRVDL (last visited June 18, 2019).



549 customer reviews
3.7 out of 5 stars

| | | |
|---|---|---|
| 5 star | | 56% |
| 4 star | | 11% |
| 3 star | | 8% |
| 2 star | | 5% |
| 1 star | | 20% |

91.    From March 26, 2019 through October 13, 2019, Cel MD continued to have this same disparity in TrustPilot reviews, racking up almost 200 five-star reviews with zero negative reviews. But on October 14, 2019—after the Cel MD Defendants learned that that they were being investigated for a class action lawsuit—this suddenly changed. A flood of one-star, two-star, and three-star reviews for Cel MD were released onto the TrustPilot website, all dated after October 14, 2019. Cel MD went from a 4.9 rating to a 4.3 rating, with its one-star ratings jumping from zero to ten percent.[54] The rating has continued to plunge now that negative reviews have been allowed, and is down to a 4.1 as of March 2020.

92.    It is a statistical impossibility that Cel MD could go more than six months and 200 reviews without a single negative review, and then suddenly receive more than 26 one-star reviews in the space of a single month.

93.    Articles online about how marketers manipulate TrustPilot explain what likely happened here. One tactic companies use that could produce these results is called review flagging: "Trustpilot allows businesses to flag a review for removal if it breaches any of their review guidelines. The review is then removed from the Trustpilot platform if found to be in breach. There are several grounds for which a review could be flagged.... These include (but are not limited to): The service experience has not occurred within the last 12 months."[55]

---

[54] TrustPilot, https://www.trustpilot.com/review/cel.md (last visited Nov. 18, 2019).
[55] Danny Richman, "Can you trust TrustPilot?," (online, June 26, 2019), https://www.seotraininglondon.org/can-you-trust-trustpilot/ (last visited Nov. 18, 2019).

94.     In other words, the Cel MD Defendants are able to simply flag negative reviews, claim the person is not a customer, and their reviews will never show up on the TrustPilot website, giving the appearance that no one is complaining. Another possibility is that the Cel MD Defendants have been purchasing fake reviews, or have been "gating" the reviews by directing certain selected customers to TrustPilot, or that they have been providing incentives to customers to post reviews on TrustPilot without disclosure.

95.     Whatever the explanation, the one explanation that cannot be true is a claim that Cel MD's TrustPilot reviews were unmanipulated. It is as if a street busker claimed to have flipped heads 200 times in a row, and then suddenly begins flipping mostly tails after they are called out for it. The most likely explanation is not a freak of statistics—it is a rigged coin.

96.     On information and belief, this vast disparity is because of manipulation or falsification of the TrustPilot reviews by Cel MD. Because the TrustPilot reviews automatically populate Cel MD's website, this manipulation makes it appear to visitors of the Cel MD website that Cel MD receives almost universally positive reviews—when in fact, the reviews on Amazon complain of problems ranging from ineffectiveness of the products to scalp burns or hair loss caused by the very Cel MD products that were supposed to prevent it.

97.     On information and belief, some of Cel MD's positive Amazon reviews are fake or were obtained through undisclosed compensation.

98.     On information and belief, some of Cel MD's positive reviews or comments on its Facebook ads are fake or were obtained through undisclosed compensation. The Cel MD Defendants have also hidden or deleted negative comments on their Facebook ads, as described further herein. On information and belief, the Cel MD Defendants have actively hidden comments on their Facebook advertisements in order to suppress negative material information from actual users who would report the same experiences of scalp burns and hair loss as reviewers on Amazon have reported, as well as other material facts the Cel MD Defendants seek to hide from their customers.

99.     On information and belief, some of the endorsers used in Cel MD's videos and video advertising were beneficiaries of undisclosed compensation or were paid actors and actresses. For example, "Sam" in one of Cel MD's Youtube videos appears to be either reading from a prepared or memorized script and stumbles over the words.[56] Similarly, "Paul" in another video appears to be an actor, with exaggerated intonations and pauses in his speech suggesting a memorized script (along with a forced and unnatural reference to a 90-day money back guarantee).[57] And "Sophie," who is featured in Cel MD advertisements, speaks in the tone of a stage actress with unnatural pauses, intonations, and facial expressions.[58] On other pages, "Sophie" is labeled as "Jennifer Denby," the supposed author of a lengthy and professionally written sales letter for Cel MD, and "Paul" is described as her husband.[59]

100.     The Cel MD website includes a link to a disclaimer on a separate page that is linked to from the bottom of the Cel MD site, included among links to five separate pages of various legal disclosures. This link is not even available on many pages on the website, and the disclaimer is not accessible from those pages. Among the legal disclaimers on this page is the statement: "Compensation And Benefits To Testimonialists. Some of the testimonialists on this site receive affiliate commissions based on sales of products or services for which they give testimonials. Other testimonialists receive free promotional materials or free products or services to review. To the best of our knowledge we believe these testimonials represent the honest opinions of the testimonialists."[60]

101.     In other words, Cel MD pays some of the individuals providing testimonials or reviews for their endorsements. But those payments are not disclosed in the Facebook ads, are not disclosed on Cel MD's Amazon page, and are not disclosed in the videos

---

[56] Cel MD Youtube page, https://www.youtube.com/watch?v=slwYoBVCjV0 (last visited June 24, 2019).
[57] Cel MD Youtube page, https://www.youtube.com/watch?v=iMeyoPjdZW0 (last visited June 24, 2019).
[58] Cel MD Facebook Page, https://www.facebook.com/watch/?v=521751705022292 (last visited June 21, 2019).
[59] Cel.Md, https://promos.cel.md/caxcspbfx_unique/ (last visited Nov. 19, 2019).
[60] Cel.Md, https://www.cel.md/pages/testimonial-results-disclaimer (last visited June 21, 2019).

featuring the paid endorsers or in proximity to any of the reviews on the Cel MD website. This failure to disclose that endorsers are being paid in reasonable proximity to the paid endorsements renders them misleading and deceptive, as the reviews are presented to consumers as if they are real or as if the endorsers are not being compensated.

102. On information and belief, and based on the structure of Cel MD's advertising, website, and sales funnel, all purchasers of the Cel MD products would have been exposed to and would have viewed reviews that were fake, compensated for without disclosure, which featured photos or videos of non-customers, or which were manipulated to make it appear as if the overall reviews were more positive than they actually were.

103. The Cel MD Defendants made material omissions regarding their customer reviews and misled consumers by omitting material information which they were under a duty to disclose relating to their reviews. The Cel MD Defendants failed to disclose to consumers who viewed their videos, their Amazon page, their website, or their Facebook advertisements that some of their reviews and endorsements were fake, compensated for without disclosure, featured images of individuals who were not the reviewer, or which were manipulated to make it appear as if the overall reviews were more positive than they actually were. While the Cel MD Defendants made limited disclosures on a separate page on their website that some of their reviews and endorsements were compensated, that disclosure is of no legal relevance because it was made on a separate page and was not made in proximity to the reviews or endorsements, and because the disclosure contained material omissions (for example, that some reviews were fake or manipulated or that the photos were not of actual customers, as well as the true nature of the actual compensation).

104. The Cel MD Defendants were under a duty to disclose this information to Plaintiff and the Class Members because the Cel MD Defendants had exclusive knowledge of material facts not known to them, namely that they had written the reviews themselves, that the photos were not of actual customers or reviewers, that the reviews or

endorsements were compensated for, or that reviews were manipulated to make it appear as if the overall reviews were more positive than they actually were.

105.    Plaintiff and the Class Members did not know this, and it was difficult to discover because information about the authorship of reviews or the compensation and identity of the authors is non-public.

106.    The Cel MD Defendants were under a duty to disclose this information to Plaintiff and the Class Members because the Cel MD Defendants engaged in active concealment, and have engaged in affirmative acts of hiding, concealing, or covering up this matter. The Cel MD Defendants have hidden or deleted negative comments on their Facebook ads, as described further herein.

107.    In aggregate, there are more than 10,000 comments listed across the Cel MD Defendants' various Facebook advertisements, which millions of people have been exposed to. On information and belief, the Cel MD Defendants have actively hidden numerous comments on their Facebook advertisements using the "Hide Comment" feature in order to suppress negative information about their products and to prevent potential customers from discovering it. These hidden comments remain accessible to the Cel MD Defendants, and Plaintiff expects that during discovery and upon a review of these hidden comments, information material to this matter will be found to have been hidden, concealed, or covered up by the Cel MD Defendants.

108.    On information and belief, the Cel MD Defendants have further engaged in active concealment by hiding, concealing, or gating negative reviews on TrustPilot in order to suppress material negative information about their products and to prevent consumers from discovering it.

109.    The Cel MD Defendants were further under a duty to Plaintiff and the Class members because they made partial representations—that the reviews reflected the statements of customers or endorsers and their actual appearance—but also suppressed, concealed, or did not disclose material facts that qualify those representations, namely that the reviews were authored by Cel MD employees or were fake, that reviewers or

endorsers were compensated, that they featured photos who were not the reviewer, or that they were manipulated to make it appear as if the overall reviews were more positive than they actually were.

110.   The Cel MD Defendants knew, or by the exercise of reasonable care should have known, that their omissions were untrue and misleading, and deliberately made the aforementioned omissions in order to deceive reasonable consumers like Plaintiff and other Class Members. Those omissions could have been corrected by including the omitted information in proximity to the reviews on the Cel MD website, by including prominent disclaimers in the Cel MD videos, by including a prominent disclaimer on its Amazon product descriptions, and/or by including prominent disclaimers in the text or videos on its Facebook advertisements.

111.   These omissions are designed to induce consumers to purchase the Cel MD products based on the positive and enthusiastic endorsements of the fake or paid reviewers. As a result of these omissions, Plaintiff and the Class purchased products they would not have or pay more for them than they otherwise would have.

112.   The Cel MD Defendants' omissions regarding their customer reviews were material to consumers. A reasonable consumer would attach importance to these omissions in deciding whether to purchase the Cel MD products because the experience of other consumers and the ratings other consumers give to products are important in a reasonable consumer's purchasing decision. A product with highly positive reviews is reasonably considered by consumers to be more valuable than a product with bad reviews, and whether or not consumer reviews are fake, involved compensation, were manipulated, or feature pictures of stock models would be important to a reasonable consumer.

**Misrepresentations and Omissions Regarding Plant Stem Cells**

113.   A core selling point across the Cel MD product line—repeated throughout the Cel MD Defendants' advertising and its website—is that the products contain "plant stem cells" which can miraculously cure ailments such as hair loss or skin problems. The

company name as well as the product names includes references to plant stem cells, suggesting that Cel MD's products work using some sort of plant stem cell technology. But this is false, and the Cel MD Defendants further omit a crucial fact from these statements that they are obliged to disclose: that "stem cells" they utilize are in fact dead plant stem cells that have been processed and turned into extract, not live stem cells, and thus they cannot be effective for hair loss or skin care. *See* Ex. 1 at 4-7.

114.   The Defendants' claims about plant stem cells are pervasive and, on information and belief, would have been viewed by every customer of the Cel MD products. For example, in video advertisements on Facebook, the Cel MD Defendants tout their Cel MD Microstem Hair Stimulating Formula product as "using never before seen stem cells extracted from asparagus...."[61] Other advertisements on Facebook tout "stem cell scientists" and products that incorporate "stem cells from the ginseng root."[62] Cel MD's Facebook advertisements uniformly present some variant of this claim regarding plant stem cells as useful ingredients, referring to their "asparagus stem cell formula,"[63] "plant stem cell technology,"[64] "formulated with rejuvenating plant stem cells,"[65] "made with hair growing stem cells" and "plant stem cells,"[66] "Cel uses stem cells spliced from asparagus,"[67] and "rejuvenating ginseng plant stem cells."[68]

---

[61] Cel MD Facebook Page,
https://www.facebook.com/stemcellmdtech/videos/302877597273302/?v=302877597273302
(last visited June 20, 2019); *see also* Cel MD Facebook,
https://www.facebook.com/watch/?v=584986425248487 (last visited June 25, 2019).
[62] Cel MD Facebook Page, https://www.facebook.com/watch/?v=375481709898653 (last
visited July 1, 2019); *see also* https://www.facebook.com/watch/?v=584986425248487
(last visited July 1, 2019); https://www.facebook.com/watch/?v=262621244685737
(last visited July 1, 2019).
[63] Cel MD Facebook Page, https://www.facebook.com/watch/?v=593499861160717 (last
visited July 1, 2019).
[64] Cel MD Facebook Page, https://www.facebook.com/watch/?v=567763017045877 (last
visited July 1, 2019); *see also* https://www.facebook.com/watch/?v=769988723400483
(last visited July 1, 2019).
[65] Cel MD Facebook Page, https://www.facebook.com/watch/?v=289061205112777 (last
visited July 1, 2019).
[66] Cel MD Facebook Page, https://www.facebook.com/watch/?v=1492061334264309 (last
visited July 1, 2019).
[67] Cel MD Facebook Page, https://www.facebook.com/watch/?v=2305197056416196 (last
visited July 1, 2019).
[68] Cel MD Facebook Page, https://www.facebook.com/watch/?v=685912108492624 (last
visited July 1, 2019).



115.   The product packaging for the Cel MD products prominently makes these misrepresentations. For example, the bottle label for both the Cel MD Shampoo and Conditioner states: "This specialized stem cell hair formula contains a blend of hair-strengthening and stimulating ingredients. Our unique three-stage formula helps repair damaged hair cells and provides the ideal nutrients for thick, luscious hair."



116. This claim is also made on the exterior of the boxes which the Cel MD Shampoo and Conditioner are contained in:



117. Identical language appears on the exterior of the box for the Cel MD Microstem Hair Thickening Mask.

118. The other Cel MD products contain near-identical representations on the product packaging. For example, the Cel MD Microstem Hair Stimulation Forumula states on its packaging: "This specialized stem cell hair formula contains a blend of hair-strengthening and stimulating ingredients, including the patented Asparagus Stem Cell Growth Formula. Our unique formula helps repair damaged hair cells and provides the ideal nutrients that result in thicker and fuller hair."



119.   The Cel MD Nanotech Stem Cell Face Mask claims on the box that: "This specialised gel mask is formulated from organic nanofibers that form a gentle bond with the surface of your skin. Our unique stem cell enhancing serum can then penetrate deeper under the dermal facial layers to rejuvenate from the inside out. By harnessing the power of stem cells and storing their growth factors in these nanofibers, the mask is more effective in delivering peptides and nutrients into damaged areas. Healing signals to the skin stimulates regeneration, and fibroblasts become activated to produce collagen and connective tissue. The result is healthier, plumper, and firmer skin."

120.   The Cel MD Stem Cell Cuticle Formula states on its box: "This specialised stem cell nail rejuvenating formula contains a blend of cuticle nourishing ingredients."

121.   The Cel MD Neck and Decolletage Cream states on its box: "This specialised cream, formulated in South Korea, is designed to form a gentle bond with the surface of your skin. Our unique ginseng stem cell cream can then penetrate deeper under the skin's layers to rejuvenate your skin from the inside out."

122.   On information and belief, all of the Cel MD products make similar claims on their packaging with a common representation: that the products utilize a stem cell formula.

123.   But these claims are false. There is no "stem cell formula" in the products, let alone one which can regrow hair, skin, eyelashes, and nail cuticles. The Cel MD products do not contain stem cells—they contain, at best, extract which has been processed with chemicals. And because of this processing, the products cannot "help repair damaged hair cells" or strengthen or stimulate hair, grow human cuticles or eyelashes, or penetrate human skin to rejuvenate it from the inside. Every customer of the Cel MD products is exposed to these misrepresentations because they appear on the labels and packaging, and customers rely on these misrepresentations in purchasing the products, in not exercising their right to return the products within the return period, and in maintaining their subscriptions.

124. In video advertisements on Youtube, the Cel MD Defendants refer to extracting stem cells from the ginseng plant, which "have been proven to combat hair thinning and loss" and which "Cel have formulated into a shampoo...."[69]

  

125. Youtube videos which are embedded in the Cel MD website make similar representations:[70]

 

---

[69] Cel MD Youtube Page, https://www.youtube.com/watch?v=HN_8fe6SSWc (last visited June 21, 2019).
[70] Cel MD Youtube Page, https://www.youtube.com/watch?v=bqVLk37Uj0M (Cel MD Microstem Hair Stimulation Formula) (last visited June 23, 2019); *see also* https://www.youtube.com/watch?v=S6x6QcT3Tsk (Cel MD Stem Cell Neck Cream) (last visited June 23, 2019); https://www.youtube.com/watch?v=CaEsRDMoEbY (Cel MD Stem Cell Rejuvenating Hand Cream) (last visited June 23, 2019); https://www.youtube.com/watch?v=1DMp__y_MKY (Cel MD Microstem Hair Stimulation Formula) (last visited June 23, 2019); https://www.youtube.com/watch?v=8t7v_oXnBWE (Cel MD Microstem Hair Stimulation Formula) (last visited June 24, 2019); https://www.youtube.com/watch?v=eoEOoZyN3HI (Cel MD Shampoo and Conditioner) (last visited June 24, 2019); https://www.youtube.com/watch?v=oPhqvnYN9M8 (Cel MD Overnight Regeneration Cream)(last visited June 24, 2019); https://www.youtube.com/watch?v=p84Fuf_4iFw (Cel MD Brow & Lash Boosting Serum) (last visited June 24, 2019); https://www.youtube.com/watch?v=RGQKQQUzZ9A (Cel MD Shampoo and Conditioner) (last visited June 24, 2019).

---

126.   The Cel MD Amazon pages describe their use of "stem cell technology."[71] The titles of almost every product Cel MD sells on Amazon includes the phrase "stem cell."[72] The Cel MD Amazon product pages tout the benefits of "ginseng and asparagus stem cells,"[73] "plant stem cells,"[74] and claim to be "made from millions of plant-based stem cell peptides that communicate with your own stem cells telling them to produce beautifully tight, glowing skin."[75] On information and belief, every customer of the Cel MD products who purchased through Amazon would have been exposed to and viewed representations that the products they purchased were beneficial because they included plant stem cells.

127.   The Cel MD website has gone through at least two iterations, and was changed substantially on roughly August 5th to August 6th 2019. The previous version was permeated with representations that their products contain beneficial plant stem cells. For example, the home page is titled "Stem Cell Inspired Beauty Products" and features imagery of plants, the "Cel MD" name, the tagline "Where Science Meets Nature," and pictures of products with names such as "Nanotech Stem Cell Face Mask" and "Stem

---

[71] Cel MD Amazon Page, https://www.amazon.com/CEL-MD-Thickening-Conditioner-Stimulating/dp/B07D7HRVDL/ (last visited July 1, 2019) (Cel MD Shampoo and Conditioner); *see also* https://www.amazon.com/CEL-MD-Stimulation-Formula-Asparagus/dp/B07GH48RX9/ (last visited July 1, 2019) (Cel MD Microstem Hair Stimulation Formula); https://www.amazon.com/Thickening-Regrowth-Thinning-Treatment-Glycerin/dp/B07N6LKXCL/ (last visited July 1, 2019) (Cel MD Shampoo stand-alone page); https://www.amazon.com/Thickening-Moisturizing-Conditioner-Regrowth-Treatment/dp/B07N6K5BCB/ (last visited July 1, 2019) (Cel MD Conditioner stand-alone page); https://www.amazon.com/Stem-Cell-Dandruff-Shampoo-Women/dp/B07PFBTMJG/ (last visited July 2, 2019) (Cel MD Anti-Dandruff Shampoo).
[72] *See Id*. Only Cel MD's Advanced Hair Supplement product does not include this language in its title.
[73] Cel MD Amazon Page, https://www.amazon.com/CEL-MD-Thickening-Conditioner-Stimulating/dp/B07D7HRVDL/ (last visited July 1, 2019) (Cel MD Shampoo and Conditioner); https://www.amazon.com/Thickening-Regrowth-Thinning-Treatment-Glycerin/dp/B07N6LKXCL/ (last visited July 1, 2019) (Cel MD Shampoo stand-alone page).
[74] Cel MD Amazon Page, https://www.amazon.com/CEL-MD-Stimulation-Formula-Asparagus/dp/B07GH48RX9/ (last visited July 1, 2019) (Cel MD Microstem Hair Stimulation Formula).
[75] Cel MD Amazon Page, https://www.amazon.com/CEL-MD-Hydrating-Moisturizing-Recovery/dp/B07289VTFV (last visited July 2, 2019) (Cel MD Nanotech Stem Cell Face Mask).

Cell Rejuvenating Hand Cream."[76] A prominent link at the top of the home page leads to a "Cel Science" page that explains "The Science of Stem Cell Skin Care" and touts "Cel's patented and expertly refined plant stem cell formula...."[77] The individual product pages from which customers purchase the Cel MD products each contain a section titled "Key Ingredients" which touts the benefits of plant stem cells. On information and belief, every customer of the Cel MD products who purchased through the Cel MD website prior to the August 5th to August 6th redesign would have been exposed to and viewed representations that the products they purchased were beneficial because they included plant stem cells.

128.   On August 5th to August 6th, 2019, the Cel MD Defendants implemented a website redesign. While the structure of the website changed and representations about plant stem cells were removed from some pages, the Defendants have not removed similar representations from their advertising leading customers to that website, have not removed it from the labels and packaging, and continue to make these representations on their website itself.

129.   For example, the Cel MD Defendants continue to represent on their website that their products utilize a plant stem cell technology:[78]

> Ever wondered how our Stem Cell Shampoo can transform your hair making it stronger, healthier and more resilient to future damage?
>
> Working with beauty experts in South Korea, we were able to produce our specialized Nanotech formula and optimize it for home-use. Our shampoo is highly effective, ensuring your hair is strong and protected, and your scalp is the optimum condition for healthy hair growth!

---

[76] Cel.md, https://www.cel.md/ (last visited July 2, 2019).
[77] Cel.md, https://www.cel.md/pages/cel-science (last visited July 2, 2019).
[78] Cel.md, https://www.cel.md/blog/5-science-driven-reasons-our-shampoo-gives-you-thicker-healthier-hair (last visited Mar. 16, 2020).

130.    This page goes on to provide a detailed description of how the "Nanotech formula" in the Cel MD Shampoo supposedly works:[79]

A plant stem cell is a type of cell that's capable of self-renewal. They can adapt to other cell forms when needed, and work to repair damage, boost regeneration and support healthy growth. When used in haircare, the stem cells encourage the formation of new hair and hair pigments. Plant stem cells also increase the lifespan of the hair follicles, so the hair can stay in the anagen phase of the hair for longer, preventing hair fall-out.

As we age, our hair follicles either become dormant completely or shrink in size. When they shrink in size it means that they still produce hair, but it's much lighter, thinner and more brittle than before so it appears like there is no hair growth at all. Using Stem Cells in your haircare routine helps to prevent this premature hair loss by stimulating the dormant follicles and encouraging thicker, stronger growth.

131.    On information and belief, the Cel MD Defendants do not use a "Nanotech formula" in their products.

132.    In another article, the Cel MD Defendants claim that plant stem cells can replace damaged human cells, increase collagen, repair human cells, and increase the production of human skin cells:[80]

Plant stem cells are what's known as undifferentiated cells, and are found in the meristems of vegetation. They work like human stem cells, in the sense that they have the ability to self-renew and replace damaged cells. This is how a plants grow back when a stem has been cut.

In the same way the cells work to repair damaged plant cells, they will help to repair the skin cells from damage and boost collagen - hitting rewind on aging skin.

---

[79] *Id.*
[80] https://stemcellmdtech.myshopify.com/blogs/news/human-stem-cells-vs-plant-stem-cells-which-one-is-better-for-younger-skin (last visited Mar. 16, 2020).

Although different to human stem cells, they're still capable of replacing the damaged cells in the skin and increasing the production of human skin cells and collagen.

133.   The article goes on to claim that Cel MD's plant stem cell technology is better than human stem cell technology, both because it is safer and because it can heal and repair skin "in a much more controlled way:"[81]

Besides the ethical issues surrounding human stem cells, the main problem with using them in our skincare routine is that they can over-stimulate our cells, leading to unwanted results and in the worst case, diseases. They're much harder to control than plant stem cells.

Plant stem cells on the other hand can heal & repair skin in a much more controlled way then human cells. Put simply, the likelihood of a severe skin reaction using plant stem cell technology is extremely small vs using human stem cells which is relatively high. This is precisely the reason we built our range of beauty products using Plant Stem Cell Technology only.

Take our best-selling Stem Cell Face Mask for example. The skin on your face is the most sensitive area on your body so it was very important for us that plant stem cells delicately interacted with skin to promote healing. Using human stem cells instead would likely result in more adverse skin reactions which we absolutely do not want!

This same rationale also applies to many of our other products that target sensitive skin areas. Our Stem Cell Eye Serum is another great example of a product that greatly benefits from a plant stem cell formulation vs human stem cell formulation. In any scenario where you deal with skin around the eyes, we wanted to make 100% sure our eye serum would provide 1) optimal skin healing but more importantly 2) not lead to any adverse skin reactions. Hence using plant stem cells!

As a final note, it is important to mention that plant stem cells, though safer to apply, still contain many of the benefits of human stem cells. It was important for us not to sacrifice any of the potential benefits of stem cells by

---

[81] *Id.*

taking the plant route. Our Stem Cell Neck & Decolletage Cream is a great example of a plant stem cell solution that works phenomenally well at tightening and firming skin around your neck. In fact, many of our customers say it works BETTER than other human-formulated stem cell products they've bought!

OUR VERDICT

When it comes to human and plant stem cells, they both work in a similar way. The only real difference is that human stem cells can be a little more potent, but when it comes to working to activate your skin cells, plant stem cells work just as well. While researchers develop more effective ways to use human stem cells in skincare, plant stem cells remain the most powerful and transforming technology in the skincare market!

To browse our range of Plant Stem Cell skincare products, click through this link!

134.   On information and belief, to the extent there are any differences in the versions of the website, the Defendants utilize data analytics tools which track customer purchases with granularity and which can be used to define a class on this issue for individuals injured after that date.

135.   Each of the representations made by the Cel MD Defendants above omits the full truth: that the plant stem cells contained in the Cel MD Defendants' products have been processed and turned into "extract," such that the cells are no longer alive and cannot provide the theoretical benefits of plant stem cells that the Cel MD Defendants are referring to in their sales materials. A detailed analysis of this issue is contained in the attached Preliminary Expert Report from Dr. Robert Farrell, a Professor of Biology at Penn State York with a background in plant and animal cell biology. Ex. 1. That analysis is incorporated here by reference.

136.   The Cel MD Defendants' website and advertisements are thin on supporting evidence for their scientific claims. But on one page of their website, the Cel MD Defendants cite an article in a journal called Future Science OA titled "Plant stem cells in

cosmetics: current trends and future directions" by Sonia Trehan, Bozena Michniak-Kohn, and Kavita Beri. The Cel MD Defendants describe this article on their website as a "[s]tudy showing the potential benefits of stem cells for combating hair loss."[82] The citation is described as supporting a statement by the Cel MD Defendants that the Cel MD Shampoo and Conditioner products include "Ginseng Stem Cells to boost hair follicle health & strengthen hair."

137.   The article is not a "study" as the Cel MD Defendants claim—it is a journal article surveying research in the field.

138.   The article discusses the potential use of plant stem cells in cosmetics applications and makes clear that "[r]esearch on the use of plant stem cells as skin care is still in its infancy."[83]

139.   The article does not include the words "ginseng" or "asparagus" and includes no discussion of ginseng or asparagus stem cells, the two types of plants that pervade the Cel MD Defendants' representations to their customers.[84]

140.   The article states that "[r]esearch on the use of plant stem cells as skin care is still in its infancy."[85] It then surveys research into various medical treatments involving "active plant cells"—in other words, living plant cells.

141.   After reviewing the current research status of various efforts involving plant stem cells, the authors note that "[t]erminology is crucial in claims made by cosmeceuticals, for example, understanding that when the term 'plant stem cell' is used as an ingredient, it actually refers to the extract of the primitive cell. Many skin care companies are promoting their products with the claim of utilizing stem cell technology."[86]

---

[82] Cel.Md, https://www.cel.md/pages/wg-shampoo-conditioner-1 (last visited June 19, 2019).
[83] Sonia Trehan, Bozena Michniak-Kohn, & Kavita Beri, *Plant stem cells in cosmetics: current trends and future directions*, 3 Future Sci. OA (2017), available at https://www.future-science.com/doi/10.4155/fsoa-2017-0026 (last visited June 19, 2019).
[84] *Id.*
[85] *Id.*
[86] *Id.*

142. But these claims are not the truth, as the authors of the article explain: "In fact, almost all cosmetic companies advertising to contain stem cells in their products actually contain stem cell extracts and not the live stem cells. Although research on plant stem cells used in skin care reveals their potential as skin protectives, antiaging and antiwrinkle products, the actual stem cells in cosmetic formulations are already dead. Extracts from stem cells cannot act in the same way as the live stem cells. Claimed benefits of smooth and firm skin are due to antioxidants and active extracts from stem cells. To gain all the authentic benefits from stem cells and to let them work the way they are promised to in skin care applications, they need to be incorporated as live cells and should remain so while in the cosmetic formulation." [87]

143. The authors of the very article the Cel MD Defendants rely on in making their scientific claims concludes that the plant stem cell extracts contained in such cosmetics are not, in fact, effective: "Plant stem cell therapy needs to move in the right direction to implement its inherent potential in skin care. This might happen in the next 20 years but any cosmetic that is advertised to be antiaging due to plant stem cells at this time is about as effective as all the skin creams without stem cells." [88]

144. To the extent "plant stem cells" are used in the Cel MD products they are not live cells, and as such are not effective, do not provide benefits to consumers, and do not function in the way that a live stem cell would. Ex. 1 at 5. Instead, the Cel MD products contain extract—dead plant material which has no connection or relation to any of the ongoing scientific speculation or research regarding the potential of live plant stem cells. The process of creating extract generally involves using chemicals (for example, alcohols) to remove raw materials in a way that would be certain to kill any plant stem cells.[89] In the cosmetics industry specifically, when plant stem cells are used to create extract it is done through a process whose steps would "generally include harvest,

---

[87] *Id.*
[88] *Id.*
[89] Extract, https://en.wikipedia.org/wiki/Extract (last visited June 19, 2019).

homogenization and disruption of the cell mass, extraction with solvents or proteolytic enzymes and/or chromatographic methods, and washing steps.... Furthermore, if the extract is a powder, a drying process with freeze dryers, spray dryers, or vacuum dryers is required."[90]

145.   The ingredients[91] for the Cel MD products make clear that they contain **extract**, not live plant stem cells: Cel MD Nanotech Stem Cell Face Mask (contains "Panax Ginseng Stem Cell Extract"); Cel MD Microstem Hair Stimulating Shampoo (contains "Ginseng Stem Cell Extract," "Malus Domestica Stem Cell Extract," "Iris Pallida Stem Cell Extract"); Cel MD Microstem Hair Stimulating Conditioner  (contains "Malus Domestica Stem Cell Extract," "Iris Pallida Stem Cell Extract"); Cel MD Microstem Hair Stimulating Formula (contains "Asparagus Officinalis Extract" along with various other plant extracts). The remaining Cel MD products purport to contain plant stem cells which are not labeled "extract" but which, on information and belief, are not live cells: Cel MD Nanotech Lash and Brow Growth Serum (contains "Ginseng Meristem Stem Cell");  Cel MD Stem Cell Eye Serum (contains "Panax Meristem Cell Culture Conditioned Media"); Cel MD Stem Cell Neck Cream (contains "Panax Ginseng Meristem Cell Culture Conditioned Media").

146.   On information and belief, to the extent the Cel MD Defendants use plant stem cells, those plant stem cells as part of a **manufacturing process** to create plant material and not as a live, active ingredient. Ex. 1 at 6. In other words, the ingredients are a product of a manufacturing process using plant stem cells to grow plant material—and once turned into extract, those cells are no longer alive and the resulting plant material is functionally no different than any other plant material harvested directly from a plant grown naturally.

---

[90] Eibl et al, *Plant cell culture technology in the cosmetics and food industries: current state and future trends*, 102 Applied Microbiology & Biotechnology (2018), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6153648/ (last visited June 19, 2019).
[91] Cel.Md, https://www.cel.md/pages/ingredients-alti (last visited June 19, 2019).

147.    A 2018 article in the Journal of Applied Biology and Microbiology makes it clear that cosmetics companies using "plant stem cells" are using those cells as a substitute method of creating plant biomass (i.e., growing the cells instead of harvesting a whole plant and processing it to create the same ingredients): "The use of plant cell cultures instead of whole plants allows products for the cosmetics and food industries to be manufactured with less energy, lower possible impacts on the environment, and independent of location and season." [92]

148.   This manufacturing process is simply a more advanced method of replicating traditional ingredients—but it does not change how those ingredients function.

149.   Notably, the Cel MD Defendants give varying and mutually inconsistent explanations to their customers of how their "plant stem cell" technology purports to work. While primarily telling their customers that their products contain plant "stem cells," at other times the Cel MD Defendants have claimed that instead the products contain plant exosomes, stating: "We extract the exosomes from plant stem cells which provide the perfect transport mechanism to penetrate the hair follicle and deliver our formula." [93]



**Kristy Giardina Smith** Does this work if you have alopecia?
Like · Reply · 6w

**Cel MD** Hi Kristy! 🙂 Yes, lots of our customers with alopecia have seen amazing results with our hair growth formula. We extract the exosomes from plant stem cells which provide the perfect transport mechanism to penetrate the hair follicle and deliver our formula. Unlike most products that simply sit on the scalp.

Try it for yourself today with our 90 day guarantee. Click "Learn More" below the video to see the offers available!
Like · Reply · 6w

---

[92] Eibl et al, *Plant cell culture technology in the cosmetics and food industries: current state and future trends*, 102 Applied Microbiology & Biotechnology (2018), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6153648/ (last visited June 19, 2019).
[93] Cel MD Facebook Page, https://www.facebook.com/watch/?v=806688903035987 (last visited June 27, 2019).

150.   Exosomes are a type of vesicle, a particle that is released from a cell to carry "cargo" outside of the cell wall.[94] They are not cells and are likewise not stem cells. Ex. 1 at 6-7.

151.   While plants do have exosomes, the study of how they work and even how to identify them is in its infancy, according to a February 1, 2019 article in The Scientist summarizing the state of research in the field: "Researchers.... have just begun to scratch the surface of what plant exosomes do."[95] Notably, February 2019 is long after Cel MD launched in roughly April 2018, or first posted on Facebook in September 2017 as Stem Cell MD.

152.   Scientists are investigating whether plant exosomes can interact with the human body by being ingested (as opposed to topically applied to hair or skin). But as the scientists quoted in the article make clear, this is a cutting-edge area of research and it is still unclear whether plant exosomes could theoretically affect human biology: "Innes says these exosome-like particles have only ever been isolated from whole homogenized plant tissue, which means they represent vesicles from inside and outside the cell. Because of this, it's still unclear whether exosomes—the only vesicles that leave the cell—truly do carry proteins or RNAs that can affect human biology. Innes's group is hoping to bring some clarity to that question by culturing cancer cells in the lab with purified exosomes from Arabidopsis and looking for changes in the cells' gene expression."

153.   As with their other explanations of how their products work, the Cel MD Defendants appear to have taken their marketing language from news articles or other sources about future areas of research, claiming to have made astounding discoveries that leading scientists in the field of plant biology were apparently totally unaware of.

---

[94] Exosome (vesicle), https://en.wikipedia.org/wiki/Exosome_(vesicle) (last visited August 16, 2019); Extracellular vesicle, https://en.wikipedia.org/wiki/Extracellular_vesicle (last visited August 16, 2019).
[95] Amanda Keener, *Exosomes Make Their Debut in Plant Research*, The Scientist (Feb. 1, 2019), available at https://www.the-scientist.com/features/exosomes-make-their-debut-in-plant-research-65336 (last visited August 16, 2019).

154.    The Cel MD Defendants cannot maintain a consistent explanation as to how it is their products actually work: in some cases they claim the product utilizes plant stem cells themselves, in others they claim to utilize peptides, in others to use the genetic engineering technology of "splicing," in others to have developed "super bacteria" which has been combined with ginseng stem cells, and in still others to utilize exosomes extracted from plant stem cells. In the ingredients for the products, however, they claim to use extract, chemically processed plant material which is no longer living.

155.    These stories are mutually inconsistent and cannot all be true. But the details do not matter to the Cel MD Defendants: they are simply spouting scientific mumbo-jumbo at their customers with the common theme of plant stem cells. They are well aware that most customers will not be trained scientists and will not have any reason to question the representation that there is some sort of advanced plant stem cell formula in the products which can cure hair loss or help their skin.

156.    The Cel MD Defendants uniformly misrepresent to their customers that the Cel MD products contain plant stem cells or a stem cell formula based on plants. This is false, as the products do not contain stem cells but instead contain chemically treated extract which cannot function as the Defendants claim.

157.    The Cel MD Defendants also deceived their customers by omission by failing to disclose the information that the plant stem cells in their products are extract containing dead plant cells, not live stem cells, and that they thus cannot provide the theoretical benefits to skin and hair that some scientists believe living plant stem cells might provide in the future.

158.    The Cel MD Defendants were under a duty to disclose this information to Plaintiff and the Class Members because the Cel MD Defendants had exclusive knowledge of material facts not known to them, namely the methods by which the plant stem cells in their products are processed and the difference between live and dead stem cells.

159.   Plaintiff and the Class Members did not know this, and the information was difficult to discover because it requires scientific expertise, as well as information regarding the Cel MD Defendants' proprietary manufacturing process for the plant stem cells which purportedly takes place in Korea.

160.   The Cel MD Defendants were under a duty to disclose this information to Plaintiff and the Class Members because the Cel MD Defendants engaged in active concealment, and have engaged in affirmative acts of hiding, concealing, or covering up this matter. The Cel MD Defendants have hidden or deleted comments on their Facebook ads containing information material to customers, as described further herein.

161.   In aggregate, there are more than 10,000 comments listed across the Cel MD Defendants' various Facebook advertisements, which millions of people have been exposed to. On information and belief, the Cel MD Defendants have actively hidden numerous comments on their Facebook advertisements using the "Hide Comment" feature in order to suppress negative information about their products and to prevent potential customers from discovering it. These hidden comments remain accessible to the Cel MD Defendants, and Plaintiff expects that during discovery and upon a review of these hidden comments, information material to this matter will be found to have been hidden, concealed, or covered up by the Cel MD Defendants.

162.   On information and belief, the Cel MD Defendants have further engaged in active concealment by hiding, concealing, or gating negative reviews on TrustPilot in order to suppress material negative information about their products and to prevent consumers from discovering it.

163.   The Cel MD Defendants were further under a duty to Plaintiff and the Class members because they made partial representations—that plant stem cells or live plant stem cells can help improve hair or skin conditions, which some scientists believe will be true in the future—but also suppressed, concealed, or did not disclose material facts that qualify those representations, namely that plant stem cells must be living at the time of

application to provide these theoretical benefits, and that any plant stem cells contained in the Cel MD products are dead plant material or extract.

164.   As a further example of these partial representations, the Cel MD Defendants portray their products as containing living and active stem cells, running video advertisements on Facebook featuring floating asparagus stem cells bouncing against a human scalp in what appears to be water from a shower or bath.[96] The accompanying text reads: "Apply It Directly To Targeted Areas... To Activate The Asparagus Stem Cell Formula."[97]



165.   In another example, the Cel MD website describes its shampoo and conditioner products as containing living plant stem cells which interact with human hair follicles via some unexplained means to increase their formation and lifespan: "A plant stem cell is a type of cell that's capable of self-renewal. They can adapt to other cell forms when needed, and work to repair damage, boost regeneration and support healthy growth. When used in haircare, the stem cells encourage the formation of new hair and hair pigments. Plant stem cells also increase the lifespan of the hair follicles, so the hair can stay in the anagen phase of the hair for longer, preventing hair fall-out."[98]

---

[96] Cel MD Facebook Page, https://www.facebook.com/watch/?v=593499861160717 (last visited June 19, 2019).
[97] *Id.*
[98] Cel.Md, https://www.cel.md/blogs/news/5-science-driven-reasons-our-shampoo-gives-you-thicker-healthier-hair (last visited June 17, 2019).

166.   The Cel MD Defendants told people who asked for details on Facebook that their "serum was specifically designed to reactivate FOLLICLES using growth signals from asparagus stem cells."[99] This suggests the presence of live asparagus stem cells interacting with human hair follicles to send these purported "growth signals."



167.   Each of the Cel MD products is touted to consumers using a common representation: that plant stem cells are being used in the products which can cure or alleviate a health condition. Each representation is misleading or deceptive because it omits that the actual ingredients are not the kind of living plant stem cells which could theoretically provide a health benefit by virtue of their status as "stem cells." Each product is marketed under the "Cel MD" line and/or along with some variant of "stem cell" or "stem" in the names, a practice which is designed to suggest the use of live plant stem cells.

168.   The Cel MD Defendants knew, or by the exercise of reasonable care should have known, that their omissions were untrue and misleading, and deliberately made the aforementioned omissions in order to deceive reasonable consumers like Plaintiff and other Class Members. Those omissions could have been corrected by including the omitted information in proximity to the representations on the Cel MD website, by including prominent disclaimers in the Cel MD videos, by including a prominent

---

[99] Cel MD Facebook Page, https://www.facebook.com/watch/?v=593499861160717 (last visited May 27, 2019).

disclaimer on its Amazon product descriptions, and/or by including prominent disclaimers in the text or videos on its Facebook advertisements.

169.  These omissions are designed to induce consumers to purchase the Cel MD products. As a result of these omissions, Plaintiff and the Class purchased products they would not have or pay more for them than they otherwise would have.

170.  The Cel MD Defendants' omissions regarding plant stem cells were material to consumers. A reasonable consumer would attach importance to these omissions in deciding whether to purchase the Cel MD products because they are seeking to purchase the products to obtain the theoretical benefits of plant stem cells, which they cannot actually benefit from since the products at issue do not contain live plant stem cells.

171.  The Cel MD Defendants further knew that they were misrepresenting to consumers that their products contained plant stem cells or a stem cell formula. As a result of these misrepresentations, consumers purchased products they would not have or paid more for them than they otherwise would have, or they retained products for longer than they otherwise would have and were damaged.

172.  The Cel MD Defendants' misrepresentations regarding stem cells were material to consumers. A reasonable consumer would attach importance to the truth or falsity of these misrepresentations in deciding whether to purchase the Cel MD products because if they knew that the products did not contain plant stem cells or a stem cell formula, and that the products could not as a matter of biology provide the claimed health benefits, consumers would not have purchased the products or would have paid less for the products. Plaintiff and the Class members thus reasonably relied upon these representations in making their purchase decisions.

**Omissions Regarding Deceptive Timers**

173.   Another way the Cel MD Defendants deceive consumers on their website is through fake countdown timers—clocks that pop-up on the screen and pretend to count down to the impending expiration of a large discount. An example appears below:



174.   The timer appears in the lower right-hand corner of Cel MD's website in a box claiming that a "40% discount" has been "applied and reserved for you for the next 20 minutes."[100] The 40% discount is referenced elsewhere on the page as being a reduction from a "Reg. Price" of $113.26 to $67.95 per month.

175.   But at the expiration of the 20-minute deadline, the timer is programmed to simply stop at the 1 second mark:

---

[100] Cel.Md, https://promos.cel.md/dmxcspsub/index.php (last visited June 17, 2019).

176.   At the end of this false deadline, nothing whatsoever happens. The "40% discount" is not being "reserved" for the customer for a limited time as the timer states. Rather, the timer simply stops counting at 1 second—and the customer is welcome to purchase at the same price whether they purchase within the 20-minute deadline or whether they wait as long as they please.

177.   Other timers that appear on the Cel MD checkout pages are set for 10 minutes, claiming to reserve product for the customer, but there is no consequence to the customer if they fail to purchase within that period:



178.   On information and belief and based on a review of the Cel MD website, every customer who purchases from the Cel MD website will encounter a timer claiming that product or discounts have been reserved, with no actual effect on the customer's ability to purchase or purchase price. To the extent they do not, on information and belief it will be possible to define a class using customer analytics data tracked by the Defendants.

179.   The Cel MD Defendants made material omissions regarding the timers on their website by omitting material information which they were under a duty to disclose relating to those timers. The Cel MD Defendants failed to disclose to consumers who

viewed the timers that the products could still be purchased after the timers had counted down, and that any discounts remained available after the timers had counted down.

180.   The Cel MD Defendants were under a duty to disclose this information to Plaintiff and the Class Members because the Cel MD Defendants had exclusive knowledge of material facts not known to them, namely that at the end of the countdown, nothing whatsoever would happen to the discount or product and the consumers would still be able to purchase at that discounted price.

181.   Plaintiff and the Class Members did not know this, and given the nature of the timer, it was difficult to discover because the Plaintiff and Class Members would have to run the risk of permanently losing a significant discount should they let the timer run out without a purchase being made. Even if Plaintiff or a Class Member had tested the timer, they lacked the specialized knowledge of computer code necessary to determine whether the timer had stopped in error or because it was programmed to.

182.   The Cel MD Defendants were under a duty to disclose this information to Plaintiff and the Class Members because the Cel MD Defendants engaged in active concealment, and have engaged in affirmative acts of hiding, concealing, or covering up this matter. The Cel MD Defendants have hidden or deleted negative information in comments on their Facebook ads, as described further herein.

183.   In aggregate, there are more than 10,000 comments listed across the Cel MD Defendants' various Facebook advertisements, which millions of people have been exposed to. On information and belief, the Cel MD Defendants have actively hidden numerous comments on their Facebook advertisements using the "Hide Comment" feature in order to suppress negative information about their products and to prevent potential customers from discovering it. These hidden comments remain accessible to the Cel MD Defendants, and Plaintiff expects that during discovery and upon a review of these hidden comments, information material to this matter will be found to have been hidden, concealed, or covered up by the Cel MD Defendants.

184.   On information and belief, the Cel MD Defendants have further engaged in active concealment by hiding, concealing, or gating negative reviews on TrustPilot in order to suppress material negative information about their products and to prevent consumers from discovering it.

185.   The Cel MD Defendants were further under a duty to Plaintiff and the Class members because they made partial representations—that a discount was available to them and had been applied—but also suppressed, concealed, or did not disclose material facts that qualify those representations, namely that there was in fact no time limit on that reservation and the discount could be claimed and the product could be purchased after the timer ran out.

186.   The Cel MD Defendants knew, or by the exercise of reasonable care should have known, that their omissions were untrue and misleading, and deliberately made the aforementioned omissions in order to deceive reasonable consumers like Plaintiff and other Class Members. Those omissions could have been corrected by including the omitted information in proximity to the timers on the Cel MD website.

187.   These omissions are designed to induce consumers to purchase the Cel MD products by creating a false sense of urgency for customers of Cel MD, misleading customers into impulse purchases they would not have otherwise made by convincing them that they will face a sudden and substantial price increase if they wait or that they will not be able to purchase these products anymore if they wait. As a result of these omissions, Plaintiff and the Class purchased products they would not have or pay more for them than they otherwise would have.

188.   The Cel MD Defendants' omissions regarding their timers were material to consumers. A reasonable consumer would attach importance to the truth or falsity of these omissions in deciding whether to purchase the Cel MD products because if the countdown has no bearing on the availability of the product or discounts, consumers would not feel the need to purchase on impulse and under time pressure that did not exist.

**Representations Regarding Limited Supply**

189.   As part of the check-out process, customers who order Cel MD products on the Cel MD website are subjected to false representations designed to make them believe that there is a limited supply of products and that they should add additional products to their order to avoid the risk of Cel MD running out of those products.

190.   After a customer completes a purchase of a Cel MD product, the customer is taken to a web page featuring an embedded Youtube video of a woman stating: "You know, ever since we released [product name], the results have been so incredible that our stock goes into backorder due to high demand. So I urge you to stock up today before it's too late." This text is read aloud and appears at the bottom of the screen. Multiple Cel MD products are simply plugged into an identical video script to produce the same message.

191.   An example for the Cel MD Brow & Lash Booster product appears below:





192.   But on information and belief, these representations are false—Cel MD's stock is not in backorder, and it is not about to be "too late" for consumers to purchase the Cel MD products. The truth is that Cel MD simply made near-identical videos of the same woman repeating the same for various products, and then shows the consumer a video making the claim about products they purchased: [101]

---

[101] Cel MD Youtube Page, https://www.youtube.com/watch?v=2zWCxNSwvcM (last visited June 20, 2019); Cel MD Youtube Page, https://www.youtube.com/watch?v=1huvDP-Hhe8 (last visited June 20, 2019).





193.   Whichever product they purchase, customers who purchase a product on the Cel MD website are exposed to a series of "upsell" pages for other Cel MD products attempting to convince the consumer to add additional products to their order. In addition to the videos, the pages contain text representations that Cel MD is having difficulty keeping the "upsell" products in stock.

194.   On information and belief, every customer who purchases from the Cel MD website is exposed to these representations, with the only difference being the name of the product inserted into the false claim.

195.   Cel MD has been making these claims that its products were on backorder with limited stock since at least August 15, 2018, when it first uploaded the Youtube "upsell" videos which it embeds on its website. From at least August 15, 2018 to the

present, Cel MD has been making these claims of product shortages to each of its customers, without any variation in the supposed status of its backorders.

196.   These misrepresentations are designed to induce consumers to add additional products to their orders and to induce them to sign up for or maintain subscription payments which were part of their order. As a result of these misrepresentations, consumers purchase products they would not have or pay more for them than they otherwise would have, or they retain products for longer than they otherwise would have and are damaged by losing access to Cel MD's limited time money-back guarantees.

197.   The Cel MD Defendants' misrepresentations regarding their limited supply or backorders were material to consumers. A reasonable consumer would attach importance to the truth or falsity of these misrepresentations in deciding whether to purchase the Cel MD products because if they knew that the products were not limited in supply and could be purchased at any time, consumers would not feel the need to purchase on impulse and under time pressure that did not exist and would not have added additional quantities to their orders based on these representations. Plaintiff and the Class members thus reasonably relied upon these representations in making their purchase decisions.

## Omissions Regarding Side Effects

198.   The Cel MD Products can have serious side effects caused by either allergic reactions to one or more of the ingredients or to chemical contamination. These include allergic reactions, anaphylactic shock, swelling, itching, red skin, scabs, burning, stinging pains, headaches, and hair loss. Many customers have reported these side effects on Amazon. The Cel MD Defendants have acknowledged that they are aware that these side effects can occur and have stated that they are caused by allergic reactions to the ingredients in their products, but only in response to specific complaints by customers in Amazon reviews—buried in the comments to the over 1000 reviews on the Amazon website for the Cel MD products and directed only at people who have already been injured.

199.   Nowhere on the Cel.MD webpage, in its Youtube video advertisements, in its Facebook advertisements or Facebook page, on its Instagram page, or on its Amazon sales pages do the Cel MD Defendants disclose any kind of risks of side effects to its products or their ingredients.

200.   A variety of Cel MD customers on Amazon have reported side effects to their products. For example, customers have reported allergic reactions after use—one customer stated that they "[n]oticed red itchy bumps on my forehead after just one use and eyes became red itchy and swollen."[102]

★☆☆☆☆ **allergic reaction**
September 17, 2018
**Verified Purchase**

There products have over 50 ingredients and should not be used by anyone who has sensitive skin. The shampoo made my scalp itchy and hair dry. The conditioner has such a strong perfume smell that after using it once, the scent lingered all day until I rewashed my hair. Noticed red itchy bumps on my forehead after just one use and eyes became red itchy and swollen. Would not recommend this product. contacted seller days ago about allergic reaction and have not heard back. Will probable have to throw the $54.00 hair products out.

147 people found this helpful

| Helpful | ⌄ 2 comments | Report abuse |

201.   One customer reported suffering a life-threatening illness as a result of using the Cel MD Shampoo: "I bought this in high hopes that it would work, so I used it ONCE. It appears that I may be allergic as I had to go to the emergency room via ambulance. Anaphalactic shock (sic)."[103] One would expect that a company that read a report like this about one's own product would attempt to warn customers or to investigate whether there was in fact an allergen (or something more serious such as a

---

[102] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/RNRFHE0I9N6BS/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[103] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R2KBGQKKFH8QTC/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited Oct. 30, 2019).

chemical contamination). But the Cel MD Defendants read this review and responded to it with nothing more than an offer to refund the price of a bottle of shampoo.



202.   Numerous other customers reported irritation of their scalp or other allergic reactions caused by the Cel MD products: "Dangerous Product. When I ordered this I was more than pleased for the first month, then, my hair started falling out more than usual, my scalp itched and I stopped used it. It is still coming out and scalp still is irritated and I blame it on this product."[104] "My scalp became irritated and broke out with scabs."[105] "I only used it once and I'm allergic. I don't have particularly sensitive skin but this caused irritation."[106] "Caused me to have severe scalp pain. Must be allergic to

---

[104] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R36XN6WFAD9QWE/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[105] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R3S7YFGB3Y1FCK/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[106] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R2UXQ97ENBGG4Q/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).

something in it."[107] "Neither pumps worked on the bottles and made my scalp itch awful."[108] "I used only 3 times and my scalp started burning and is red and my hair looks like it's falling out even more, andddthe (sic) conditioner pump doesn't work."[109] "I used this product for one week. About midweek I started suffering bad headaches. The headaches stopped when I stopped using the product."[110] "It burned my skin and made my hair dry and brittle."[111] "I bought this shampoo and conditioner July 03, 2019. All i am left with is severe burning thruout the scalp, hair follicles became inflamed. I am not sure what is in the shampoo but I am 100% sure, it has lots of chemicals to it. Part of my hair has gone thru bumps thru out the scalp. It hurts when you put your head on the pillow."[112] "The shampoo irritated my scalp. After almost two weeks of using I got red painful bumps and my scalp started to itch. Also, I have noticed dandruff a problem I never had before."[113]

[107] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/RFIES7O0PIJ6U/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[108] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/RQUAVPYZEH6P8/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[109] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R2T283T0HPD6ZL/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[110] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R1T1XCCX51X9YP/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[111] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R80NZDLZWVAX2/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited Oct. 30, 2019).
[112] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R3QJM8MWVHM466/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited Oct. 30, 2019).
[113] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R18M9J7GXMRMI6/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited Oct. 30, 2019).

203.   Another customer reported that after using Cel MD Shampoo & Conditioner, "my hair started falling out 3x more than usual and massive breakage started.... I'm not exaggerating when I say I've lost 1/3 of my hair or more since the beginning of November. I stopped using it 3 weeks ago and the destruction continues."[114] An individual named Sheila purporting to be an employee of Cel MD responded, and on information and belief Cel MD was aware of this complaint. In fact, Cel MD employees routinely responded to complaints on Amazon of various side effects, and an employee posting under the name Sheila A. responded to virtually every such complaint to try to assure consumers that this was a non-issue.



204.   Numerous other reviewers report that the Cel MD products cause hair loss. "Made my hair fall out in clumps during the first use."[115] "HORRIBLE-CAUSED

---

[114] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R2DQ00L8MR6FLG/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[115] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/RY5HTUE9QIC8D/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).

MUCH MORE HAIR LOSS-DO NOT BUY THIS TOXIC JUNK!!!"[116] "Hair loss got even worse while using this shampoo and this conditioner. Also, it dried out my hair."[117] "Made my hair fall like crazy."[118] "It's destroyed my hair and I'm having to cut 3-5 inches off. DO NOT BUY IT!!!"[119] "My hair did not grow at all, instead losing more hair from top to middle."[120] "This product did not regrow any hair instead my hair thinned and lost more hair."[121] "My hair fell out more than before."[122] "Shed my hair more than previous shampoo that I use, and it was cheaper than this celebrity shampoo, I think too many good but fake reviews."[123] "My hair started falling out more. Made my hair dry and frizzier then ever. My scalp is so itchy as well. It ruined my fine hair."[124] "Caused major

[116] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R18GSPS18ILM33/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[117] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R2MDR7JTQJHZIF/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[118] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R12Q8KQHISCL0T/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[119] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/RUQ4HYS4SGMFY/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[120] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R26OMYGGNIZRR9/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[121] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/RC6RSFZ4NAEXT/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[122] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R2BYJL6TWENLFS/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[123] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R2LKY86WFF22J7/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[124] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R32LGUL308TZCU/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).

1  hair loss... Each time I used this shampoo, I would lose over 30 hairs!"[125] "This shampoo
2  is just another joke. Don't waste your money! It's all a scam!"[126]

3     205.  The Cel MD Defendants specifically stated that they knew some of their
4  ingredients could cause allergic reactions: "Sorry to hear this. It is very uncommon, but
5  some people do get adverse reactions to one of the ingredients."[127]



6

7

8

9

10

11

12

13

14

15

16

17     206.  In another case, this Cel MD employee not only admitted knowledge of the
18  side effects but played doctor by providing medical advice to a customer reporting that
19  the product was thinning her hair. The Cel MD employee's advice was not to stop using

20

21

22  [125] Amazon Review of Cel MD Shampoo & Conditioner,
23  https://www.amazon.com/gp/customer-
    reviews/R2S36DY8MXBT7K/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last
    visited June 25, 2019).
24  [126] Amazon Review of Cel MD Shampoo & Conditioner,
    https://www.amazon.com/gp/customer-
25  reviews/R1HQKGAK73NNC3/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last
    visited June 25, 2019).
26  [127] Amazon Review of Cel MD Shampoo & Conditioner,
    https://www.amazon.com/gp/customer-
27  reviews/R1OQ0D30Y22A6B/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last
    visited June 25, 2019); *see also* https://www.amazon.com/gp/customer-
28  reviews/R2UXQ97ENBGG4Q/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last
    visited June 25, 2019).

the product, but instead to cut down the number of times per week they used the product and "see if you are still reacting to it!"[128] This statement constitutes medical advice and on information and belief was made by a Cel MD employee without a medical license. As such these statements are unlawful and constitute the unauthorized practice of medicine in California. Cal. Bus. & Professions Code § 2052.



207.   This language appears to have been form medical advice provided by Cel MD employees to customers who complained of side effects, as it was repeated to others, as was the admission that "some people do get adverse reactions:"[129]

---

[128] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R1V71TR9P0DMZE/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[129] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/RED4XLEKNX30R/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).

208.   Additionally, one of the Cel MD employees who repeatedly responded to customer complaints on Amazon was an Amazon user who identified himself as "Jack— Founder of Cel MD."[130] The account for "Jack" responded specifically to several complaints that the Cel MD products caused hair loss, and thus the user behind the "Jack" account would have had specific knowledge of these side effects and customer complaints regarding them. "Jack" lists his location as New York, NY.[131]

209.   Nowhere on the Cel MD website are these known side effects and allergic reactions or chemical reactions disclosed.

210.   Nowhere in the Cel MD Facebook advertisements or Youtube videos are these known side effects and allergic reactions or chemical reactions disclosed.

211.   Nowhere on the main pages of Cel MD's Amazon Product pages are these known side effects and allergic reactions or chemical reactions disclosed. The only location any statement regarding this issue was made is in comments responding to reviews reporting to those reactions on Amazon, which are accessible only after multiple

---

[130] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R1T4RDMHO4KAVJ/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[131] Profile of Jack—Founder of Cel MD, https://www.amazon.com/gp/profile/amzn1.account.AF3ADZCDBRTZJXVN5D4X3CF2YZTQ/ref=cm_cr_getc_d_pdp?ie=UTF8 (last visited June 25, 2019).

clicks away from the purchasing page and only after finding and reading those specific reports from customers.

212.   Cel MD's products bear a warning label that states the following: "Warnings: Stop using this product if you experience any symptoms on the area this product was applied, including red spots, swelling, itching, or irritation. If the symptoms worsen, consult a dermatologist immediately. If you experience side effects (burning, hair loss, rashes) please stop using the product immediately." The screenshot below is of the warning on Cel MD's shampoo product:



213.   This warning is only provided to consumers after they have purchased the Cel MD products. The warning fails to disclose that these are known side effects which have occurred with other customers. And it fails to disclose the specific ingredient which the Cel MD Defendants told certain Amazon customers they knew to cause these allergic reactions.

214.   The Cel MD Defendants made material omissions regarding the side effects caused by their products by omitting material information which they were under a duty to disclose relating to those side effects. The Cel MD Defendants failed to disclose to consumers that their products were known to cause side effects including allergic reactions to one or more of the ingredients, reactions, anaphylactic shock, swelling, itching, red skin, scabs, burning, stinging pains, headaches, and hair loss. The Cel MD Defendants further were aware of at least one ingredient in their products that caused allergic reactions, but failed to disclose this knowledge to consumers and failed to disclose which ingredient it was.

215.   The Cel MD Defendants were under a duty to disclose this information to Plaintiff and the Class Members because the Cel MD Defendants had exclusive knowledge of material facts not known to them, namely that their products caused these side effects and that there is an ingredient in their products which causes allergic reactions.

216.   Plaintiff and the Class Members did not know this, and given the nature of the side effects, it was difficult to discover because the Plaintiff and Class Members would have to go to Amazon and sift through hundreds of reviews and read their comments.

217.   The Cel MD Defendants were under a duty to disclose this information to Plaintiff and the Class Members because the Cel MD Defendants engaged in active concealment, and have engaged in affirmative acts of hiding, concealing, or covering up this matter. The Cel MD Defendants have hidden or deleted comments on their Facebook ads containing negative material information, as described further herein.

218.   In aggregate, there are more than 10,000 comments listed across the Cel MD Defendants' various Facebook advertisements, which millions of people have been exposed to. On information and belief, the Cel MD Defendants have actively hidden numerous comments on their Facebook advertisements using the "Hide Comment" feature in order to suppress negative information about their products and to prevent

potential customers from discovering it. These hidden comments remain accessible to the Cel MD Defendants, and Plaintiff expects that during discovery and upon a review of these hidden comments, information material to this matter will be found to have been hidden, concealed, or covered up by the Cel MD Defendants.

219. The specific comments alleged to have been hidden herein specifically related to accusations that Cel MD products cause hair loss, one of the reported side effects, and the Cel MD Defendants actively concealed that information from customers at least by hiding those customer comments on Facebook.

220. On information and belief, the Cel MD Defendants have further engaged in active concealment by hiding, concealing, or gating negative reviews on TrustPilot in order to suppress material negative information about their products and to prevent consumers from discovering it.

221. The Cel MD Defendants were further under a duty to Plaintiff and the Class members because they made partial representations—that their products were "safe," did not have side effects like competing products, and contained no negative or "nasty" ingredients—but also suppressed, concealed, or did not disclose material facts that qualify those representations, namely that there were in fact side effects (even if they differed from those in competing products), were not safe for all consumers, and their products did in fact contain ingredients which could be negative or "nasty" in that they caused allergic reactions.

222. For example, in video advertisements on Facebook, the Cel MD Defendants tout their Cel MD Microstem Hair Stimulating Formula product using the tag line "Hair Growth Without The Side Effects" and state that their "Stem-Cell Hair Serum Is Formulated To Stimulate New Growth Without The Harmful Side Effects!" [132] In touting its product to consumers as having no side effects, Cel MD's video advertisement hints at

---

[132] Cel MD Facebook Page,
https://www.facebook.com/stemcellmdtech/videos/302877597273302/?v=302877597273302
(last visited June 20, 2019).

the side effects of competing products with phallic imagery of a melting popsicle next to photographs of an unhappy looking man in a bedroom next to a bored-looking woman lying in bed, presumably to indicate that a side effect of competing products is erectile dysfunction.



223.   The Cel MD Defendants represented to various customers on Facebook that their products lacked side effects. In response to one customer asking "Cel MD" for medical advice about an infected scalp, the Defendants began selling their product as a substitute to the Rogaine he had been using, claiming: "It works similarly to Rogaine, but without the side effects."[133]

---

[133] Cel MD Facebook Page, https://www.facebook.com/watch/?v=328821494502181 (last visited June 27, 2019).



224.   In another comment, the Cel MD Defendants told customers their products have "no chemical reactions that cause hair to fall out" and that "[i]t is perfectly safe for bleached and colored hair...."[134]



225.   Despite knowing and acknowledging in response to negative reviews on Amazon that "some people do get adverse reactions to one of the ingredients," the Cel MD Defendants gave medical advice to a recovering cancer patient on Facebook that "[r]elying on plant stem cells and natural minerals means every bottle is filled with hair-positive effects and nothing nasty you need to worry about."[135]

---

[134] Cel MD Facebook Page, https://www.facebook.com/watch/?v=521751705022292 (last visited June 27, 2019).
[135] Cel MD Facebook Page, https://www.facebook.com/watch/?v=375481709898653 (last visited June 27, 2019).

COMPLAINT FOR DAMAGES - 79

226.   The Cel MD Defendants told another customer that "our shampoo is SAFE for ALL hair types."[136]



227.   The Cel MD Defendants represented to customers on Facebook asking about whether their shampoo and conditioner were safe that their products were "perfectly safe."[137]



228.   Not only did the Cel MD Defendants fail to disclose these side effects, but in their interactions with customers on Facebook and Amazon, the Cel MD Defendants show a despicable lack of concern for their customer's health that is so vile, base, and contemptible that it would be looked down on and despised by reasonable people. Customers with hair loss from severe health conditions were encouraged to simply try the Cel MD products, even in cases where a doctor's advice would have been crucial. The Cel MD Defendants did not disclose the known existence of side effects and instead

---

[136] Cel MD Facebook Page, https://www.facebook.com/watch/?v=412288552680397 (last visited June 27, 2019).
[137] Cel MD Facebook Page, https://www.facebook.com/watch/?v=289061205112777 (last visited June 27, 2019).

played doctor themselves, urging patients with severe medical problems that the solution to their ills was to purchase snake oil. The Cel MD Defendants showed no regard whatsoever for the health issues or emotional stress these customers were facing—all that mattered was closing the sale at any cost.

229.   For example, the Cel MD Defendants told an individual who had "hair loss because of scarring from brain surgery" to simply try their products, giving specific medical advice about a potential method of "solving your problem" (which of course involved buying Cel MD shampoo).[138]



230.   As might be expected from a company staffed by unqualified marketers posing as doctors under the "MD" banner, the unlicensed medical advice the Cel MD Defendants doled out was not even consistent. While diagnosing brain surgery patients with an urgent need to try the Cel MD products to cure hair loss from surgical scarring, just a few weeks before the Cel MD Defendants had advised another victim of scarring

---

[138] Cel MD Facebook Page, https://www.facebook.com/watch/?v=593499861160717 (last visited May 27, 2019).

that "it is unlikely any product would claim to resurrect follicles that are entirely dead (as in the case of scar tissues)."[139]



231.   The Cel MD Defendants told a cancer patient who had suffered scarring and hair loss after surgery for melanoma that the Cel MD Shampoo and Conditioner would "give your follicles & hair the best chance of re-stimulation and thicker, healthier growth."[140]   Again, the Cel MD Defendants' efforts to act as the medical practice they held themselves out to be were inconsistent: this advice contradicted their prior medical advice that hair loss from scarring could not be cured by their products.



232.   The Cel MD Defendants told a cancer patient who had recently undergone chemotherapy that "we have many customers who've seen impressive results using Cel Hair Serum after chemo, as it helps support the health of the hair follicle and get it back

---

[139] Cel MD Facebook Page, https://www.facebook.com/watch/?v=806688903035987 (last visited June 27, 2019).
[140] Cel MD Facebook Page, https://www.facebook.com/watch/?v=593499861160717 (last visited May 27, 2019).

to proper working order.... Especially after the effects of chemo, it's important hair is supplied with all available proteins and fatty acids that it needs." [141]



233.  When asked whether they should speak to a doctor before using the Cel MD products, the Cel MD Defendants specifically advised a customer not to: "No that is not necessary at all. There is no need to see an MD before using the serum just make sure you don't have any intolerance to any of the ingredients." [142]



234.  Such statements are among many others the Cel MD Defendants, who lack medical licenses, have made online via Facebook to individuals with serious medical conditions, all under the name "Cel MD." These statements are unlawful, constitute the unauthorized practice of medicine in California. Cal. Bus. & Professions Code § 2052. They therefore violate the unlawful prong of the California UCL.

235.  The Cel MD Defendants knew, or by the exercise of reasonable care should have known, that their omissions were untrue and misleading, and deliberately made the aforementioned omissions in order to deceive reasonable consumers like Plaintiff and other Class Members. Those omissions could have been corrected by including the omitted information in a prominent position on the Cel MD website, by including

---

[141] *Id.*
[142] Cel MD Facebook Page, https://www.facebook.com/watch/?v=302877597273302 (last visited June 25, 2019).

prominent disclaimers in the Cel MD videos, by including a prominent disclaimer on its Amazon product descriptions, and/or by including prominent disclaimers in the text or videos on its Facebook advertisements.

236.   These omissions are designed to induce consumers to purchase the Cel MD products. As a result of these omissions, Plaintiff and the Class purchased products they would not have or pay more for them than they otherwise would have.

237.   The Cel MD Defendants' omissions regarding side effects were material to consumers. A reasonable consumer would attach importance to these omissions in deciding whether to purchase the Cel MD products because had they known that the products could cause serious side effects, they would not have paid as much for them or would not have purchased them in the first place.

### Omissions Regarding Effects of
### Discontinuing Use of Cel MD Products

238.   Plaintiff disagrees that the Cel MD hair loss products have any effect on hair loss. But to the extent they do, it is undisputed that these effects are only temporary, and that any hair growth will be reversed if the customer stops using the Cel MD products. The Cel MD Defendants do not disclose this to their customers generally and did not do so in proximity to their many representations that the products help regrow hair or prevent hair loss.

239.   In conversations with customers on Facebook, the Cel MD Defendants admit that if a customer discontinues the use of their products, their hair growth will reverse, and their hair "will return to the condition it was in prior to using the product."[143]

---

[143] Cel MD Facebook Page, https://www.facebook.com/watch/?v=375653146380450 (last visited June 26, 2019).



240.   But the only place that the Cel MD Defendants deigned to inform their customers of this fact was when individual customers specifically asked about it in Facebook comments—buried among thousands of others.

241.   The Cel MD hair growth products (Cel MD Microstem Shampoo, Cel MD Microstem Conditioner, Cel MD Brow & Lash Boosting Serum, Cel MD Microstem Hair Stimulation Formula, Cel MD Microstem Dandruff Cleansing and Hair Thickening Shampoo, Cel MD Advanced Hair Supplement, Cel MD Microstem Hair Thickening Mask) are all promoted with one general purpose: to help reverse hair loss and regrow hair. This is the entire point of buying them. On information and belief, every customer who purchases from the Cel MD website or from Amazon will encounter representations that these products help to regrow hair or prevent hair loss, as the very names of these products suggest.

242.   The Cel MD Defendants made material omissions regarding the ability of their hair growth products to regrow hair or prevent hair loss by omitting material information which they were under a duty to disclose relating to their efficacy. The Cel MD Defendants failed to disclose to consumers that any benefits from their hair growth products is temporary, and that if a consumer discontinues the use of these products their hair will return to its original condition.

243.   The Cel MD Defendants were under a duty to disclose this information to Plaintiff and the Class Members because the Cel MD Defendants had exclusive knowledge of material facts not known to them, namely that if a consumer discontinues the use of their hair growth products, their hair will return to its original condition.

244.   Plaintiff and the Class Members did not know this, and given the nature of the claim, it was difficult to discover because it would require scientific testing of the

products or actual use of those products to discover. A consumer would not discover that the products could not provide any permanent benefits without buying it and testing it on themselves.

245.   The Cel MD Defendants were under a duty to disclose this information to Plaintiff and the Class Members because the Cel MD Defendants engaged in active concealment, and have engaged in affirmative acts of hiding, concealing, or covering up this matter. The Cel MD Defendants have hidden or deleted comments containing negative material information on their Facebook ads, as described further herein.

246.   In aggregate, there are more than 10,000 comments listed across the Cel MD Defendants' various Facebook advertisements, which millions of people have been exposed to. On information and belief, the Cel MD Defendants have actively hidden numerous comments on their Facebook advertisements using the "Hide Comment" feature in order to suppress negative information about their products and to prevent potential customers from discovering it. These hidden comments remain accessible to the Cel MD Defendants, and Plaintiff expects that during discovery and upon a review of these hidden comments, information material to this matter will be found to have been hidden, concealed, or covered up by the Cel MD Defendants.

247.   On information and belief, the Cel MD Defendants have further engaged in active concealment by hiding, concealing, or gating negative reviews on TrustPilot in order to suppress material negative information about their products and to prevent consumers from discovering it.

248.   The Cel MD Defendants were further under a duty to Plaintiff and the Class members because they made partial representations—that their products could help regrow hair or prevent hair loss—but also suppressed, concealed, or did not disclose material facts that qualify those representations, namely that any such benefits were temporary and that if a consumer stopped using the Cel MD hair growth products, their hair would return to its original condition.

249.   The Cel MD Defendants knew, or by the exercise of reasonable care should have known, that their omissions were untrue and misleading, and deliberately made the aforementioned omissions in order to deceive reasonable consumers like Plaintiff and other Class Members. Those omissions could have been corrected by including the omitted information in proximity to the representations on the Cel MD website, by including prominent disclaimers in the Cel MD videos, by including a prominent disclaimer on its Amazon product descriptions, and/or by including prominent disclaimers in the text or videos on its Facebook advertisements.

250.   These omissions are designed to induce consumers to purchase the Cel MD products by promising them hair growth, without informing them that any such growth would be temporary at best. As a result of these omissions, Plaintiff and the Class purchased products they otherwise would not have or paid more for them than they otherwise would have.

251.   The Cel MD Defendants' omissions regarding their products' ability to regrow hair or stop hair loss were material to consumers. A reasonable consumer would attach importance to the truth or falsity of these omissions in deciding whether to purchase the Cel MD products because if the hair growth was only temporary, the consumer might not be willing to buy the products at all, or might not be able to afford a permanent subscription to the Cel MD hair growth products and thus might not ever buy them in the first place.

### Evidence of Malice, Intent, and
### Knowledge of Wrongful Conduct

252.   In addition to the misrepresentations, omissions, and other wrongful conduct described herein, the Cel MD Defendants have engaged in pervasive acts of dishonesty throughout their marketing practices. These wrongful acts are relevant to the instant action because they show that the Cel MD Defendants intentionally conspired to commit wrongful acts, intentionally aided and abetted wrongful acts, and the sheer volume of misrepresentations being made by them implies knowledge of the other wrongful acts

underlying the causes of action herein. They further constitute predicate acts for the RICO scheme alleged herein.

253.   This pervasive dishonesty additionally serves as proof that the Cel MD Defendants should be obligated to pay punitive damages because they committed the acts underlying the instant causes of action with malice, oppression, or fraud, and that the Cel MD Defendants intended to cause injury, that their conduct was despicable, and that their behavior underlying the causes of action was so vile, base, and contemptible that it would be looked down on and despised by reasonable people.

254.   The Cel MD Defendants would say anything to make a buck. And they said various things to various customers—some representations were made to all of their customers, as described above, and some representations were made to only a portion of their customers, but were so outlandishly dishonest that they call into question every word that comes out of the Defendants' mouths.

255.   Many of the Cel MD Defendants' sales pitches read like bad science fiction stories. For example, they told some of their customers that they operate an "advanced human stem cell cloning facility" which was used to make their Nanotech Stem Cell Facemask product: "The one-of-a-kind mask uses a patented stem cell cloning methodology. The process begins with consenting adult volunteers donating stem cells from their own body to a AAA grade stem cell cloning facility. There, the stem cells are cloned into new stem cell peptides, and then inserted into the mask. Upon contact with skin, these stem cell peptides act as a second 'super-skin', nourishing it from its deepest layers."[144]

256.   On information and belief, the Cel MD Defendants do not run, own, or otherwise operate a "stem cell cloning facility," do not engage in cloning of human stem

---

[144] Cel.MD, https://www.cel.md/products/4x-stem-cell-face-masks-one-month-supply-fbdg (last visited July 7, 2019); *see also* https://www.cel.md/collections/all/shopifydiscount (last visited July 7, 2019).

cells, do not have or utilize any volunteers who are "donating stem cells from their own body," and have not developed a "super skin."

257.   If the Cel MD Defendants have in fact cloned human stem cells from volunteers in an advanced cloning facility and created a "super skin" based on human stem cells for inclusion in their products, those ingredients are not listed on the labels for the products[145] and the Defendants have violated a variety of state and federal laws by incorporating those cloned human cells without any kind of disclosure. *See* Ex. 1 at 7.

258.   If the Cel MD Defendants are instead simply making up a ridiculous sci-fi story about "super skin" and a non-existent human stem cell cloning facility in an effort to deceive their customers into purchasing their products, it is proof of their knowledge, intent, and malice for the various causes of action herein.

259.   "Super skin" is not the only improbable discovery the Cel MD Defendants claim to have made. They also claim to have developed "super bacteria" and "super biotin" at a laboratory they operate in South Korea.

260.   The Cel MD Defendants' website claims that Cel MD has a "South Korean lab" staffed by "South Korea beauty specialists."[146] Those specialists supposedly "spent 2 years perfecting this formula with our US Stem Cell Experts."[147]

261.   Claims about South Korean scientists are repeated throughout the Cel MD Defendants' website—but with varying descriptions of the supposed scientists and their expertise. The Cel MD website repeatedly invokes the involvement and qualifications of these Korean scientists in varying and often contradictory language regarding its line of products: "working closely with leading Korean 'plant stem cell' scientists," "CREATED BY US & KOREAN STEM CELL SKIN CARE EXPERTS," "[c]reated by US Stem Cell Experts, and perfected for your own home-use, by Nanotech beauty experts in Seoul,

---

[145] *See* Cel.MD, https://www.cel.md/pages/ingredients-alti (last visited July 7, 2019).
[146] Cel.Md, https://www.cel.md/collections/stem-cell-cuticle-oil (last visited June 17, 2019); Cel.Md, https://promos.cel.md/dmxchfgift/index.php (last visited June 18, 2019).
[147] *Id.*

South Korea," "[e]xpertly selected by US & South Korean skin scientists," "PERFECTED IN OUR SOUTH KOREAN LABORATORY," "our talented group of Korean scientists," and "Hundreds of hours of research and development by our Korean beauty experts, combined with our U.S. scientists."[148]

262.   On information and belief, the Cel MD Defendants do not employ Korean scientists who meet their descriptions of polymath experts in four separate scientific fields: skin scientists, nanotech scientists, beauty experts, and plant stem cell scientists.

263.   The Cel MD website also claims that these South Korean scientists created a "super bacteria" which they have combined with ginseng stem cells for use in the Cel MD products: "Scientists in Korea have recently developed new super bacteria that could help restore the natural balance of good bacteria on your skin, promoting stronger, healthier skin. What's more, they have combined them with ginseng stem cells, which can offer a variety of anti-aging benefits, including hydrating & revitalizing dry and damaged skin.... The super bacteria & plant stem cells contained within our 3-step formula could help repair and protect your skin by restoring it's natural balance of healthy bacteria."[149]

264.   On information and belief, the Cel MD Defendants have not developed a "super bacteria," and to the extent there is such a "super bacteria" that Cel MD has combined with ginseng stem cells using its Korean beauty/skin/nanotech/plant stem cell scientists, the Cel MD Defendants have violated various state and federal laws by not getting approval for and then disclosing the existence of this "super bacteria" in its ingredients. *See* Ex. 1 at 7.

---

[148] Cel.Md, https://www.cel.md/pages/wg-shampoo-conditioner-1 (last visited June 18, 2019); Cel.Md, https://www.cel.md/collections/face-packs-alti (last visited June 18, 2019); https://www.cel.md/collections/eye-serum-alti (last visited June 18, 2019); https://www.cel.md/collections/shampoo-and-conditioner (last visited June 18, 2019); https://promos.cel.md/bwxcspsteps/index.php (last visited June 18, 2019);
[149] Cel.Md, https://www.cel.md/pages/microbiome-skincare (last visited June 18, 2019).

265. The Cel MD Defendants also falsely represent that their Advanced Hair Supplement product contains a unique ingredient called "Super Biotin" which has been clinically proven to nourish, strengthen, and rejuvenate damaged, lifeless hair."[150]



266. In fact, no such thing as "super biotin" exists—the labels to the Cel MD product page for its Advanced Hair Supplement which supposedly uses the "super biotin" indicates that it contains "Biotin vitamin B7."[151] Vitamin B7 is simply another name for biotin.

[150] Cel MD Youtube Page, https://www.youtube.com/watch?v=m0jjdWvfrqs (last visited June 23, 2019); see also https://www.youtube.com/watch?v=5OXomoujsYA (last visited June 24, 2019).
[151] Cel MD Amazon Page, https://www.amazon.com/CEL-Advanced-Vitamins-Supplement-Strengthening/dp/B07P65TJ8L (last visited July 8, 2019).

267.   The Cel MD Defendants claim that their Nanotech Stem Cell Face Mask "is made from millions of plant-based stem cell peptides that communicate with your own stem cells telling them to produce beautifully clear, glowing skin."[152] They further tell customers that this product "**actually rewires your skin** to repair and regenerate as if it were young again" (emphasis in original).[153] Instead of Korean scientists, this page attributes the miracle product to "[a] NY based stem cell expert."[154] Regardless of who developed this product, as discussed herein in the "Misrepresentations and Omissions Regarding Plant Stem Cells" section, the plant material in Defendants' products is extract, meaning that it has been treated with solvent, any cells are no longer alive, and it is physically impossible for them to communicate with human stem cells or to "rewire" human skin.

268.   The Cel MD Defendants cannot stay consistent in their story about who has created the super skin, the super bacteria, the super biotin, and the magical skin rewiring capabilities. On some portions of their website, the Cel MD Defendants abandon their claims about Korean scientists, and instead claim that it was scientists in the United States who created their products: "[o]ur patented, nanotech (sic), plant-based formula was created in the US by a leading Stem Cell expert to effectively combat hair thinning and loss."[155] Another page claims that the Cel MD shampoo and conditioner products were "MADE BY US HAIR LOSS & STEM CELL EXPERTS."[156] And another claims that Cel MD's Nanotech Stem Cell Face Mask was "[d]eveloped by a group of America's leading stem cell experts."[157]

269.   Other parts of the Cel MD website refer to its formulas being selected by doctors in the United States: "Our powerful blend of ethically sourced, nutrient-rich

---

[152] Cel.Md, https://www.cel.md/pages/why-stem-cell-md-decided-to-offer-a-free-trial-on-top-selling-product-1 (last visited July 29, 2019).
[153] Id.
[154] Id.
[155] Cel.Md, https://www.cel.md/collections/shampoo-and-conditioner (last visited June 18, 2019).
[156] Id.
[157] Cel.Md, https://www.cel.md/collections/all/send_to_checkout (last visited June 21, 2019).

1  ingredients have been carefully selected by US doctors to create a technologically

2  advanced neck & décolletage formula."[158]

3      270.   These   claims   are   mutually   exclusive:   either   the   Korean

4  beauty/skin/nanotech/plant stem cell scientists or "America's leading stem cell experts"

5  created their products, but the Cel MD Defendants cannot make up their mind as to

6  which.

7      271.   The Cel MD Defendants also claim their products have received approvals

8  from the Food and Drug Administration ("FDA").

9      272.   The Cel MD Defendants stated on their website regarding their Nanotech

10 Stem Cell Face Mask that "the mask was cleared by the FDA this year, confirming that it

11 is 100% safe to use." [159]

12     273.   On Amazon, the Cel MD Defendants represent to the customers of their

13 shampoo and conditioner that "[o]ur products are FDA approved...."[160]

14
15 

16
17     274.   The Cel MD Defendants have included a "Frequently Asked Questions"

18 section on their website with the question: "Are Stem Cell products FDA approved?"

19 Their response was: "Yes! In early 2017 Cel MD was granted FDA approval for our

20 masks to sell to consumers and other businesses. The approval board recognized the high

21 quality of ingredients and expedited the process approval."[161]

22     275.   Prior to the August 2019 redesign of their website, the Cel MD Defendants

23 included  a  lengthy  description  of  the  process  of  their  supposed  "Testing  &  FDA

24

25 [158] Cel.Md, https://www.cel.md/collections/cel-neck-decolletage-cream-dtcc (last
   visited June 18, 2019).
26 [159] Cel.Md, https://www.cel.md/collections/all/send_to_checkout (last visited June
   21, 2019).
27 [160] CEL MD Stem Cell Hair Growth Thickening Shampoo and Conditioner for Women and
   Men, https://www.amazon.com/ask/questions/Tx2XEQE1VP3605W/ref=ask_ql_ql_al_hza
28 (last visited June 26, 2019).
   [161] Cel.Md, https://www.cel.md/pages/ingredients-testing (last visited Aug. 1, 2019).

Approval" which described "[i]nitial tests conducted in late 2016" of their purported stem cell formula, and concluded that "[f]ollowing FDA approval at the start of 2017, we were both proud of Cel's capabilities, and confident that it was ready for you to try at home."[162]

276.  On information and belief, the Cel MD Defendants do not have FDA approvals for their products, and they lied to their customers about the government having approved them in order to make their products seem safer and more reliable.

277.  Another way the Cel MD Defendants imply government approval of their products to their customers is to represent that they own patents on the formulas used in their products. For example, they claim to their customers that they have created "Cel's patented and expertly refined plant stem cell formula."[163] They claim that "[o]ur powerful, patented healing formula is scientifically proven to promote younger looking skin."[164] The Cel MD website refers to their "patented absorption technology,"[165] "our patented anti-aging plant stem cell technology,"[166] "[t]he one-of-a-kind mask uses a patented stem cell cloning methodology,"[167] and "[t]he patented nano-technology in our skin care range."[168] Cel MD Youtube videos contain similar representations.[169]

278.  Patent searches using Google Patents for Christopher Masanto, Andrew Masanto, Cel MD, Amplify Limited, Altitude Ads, and Blooming Investments do not reveal any patents in the name of any of the Cel MD Defendants or relating to any of their products.

---

[162] Cel.Md, https://www.cel.md/pages/about-alti (last visited Feb. 25, 2019).
[163] Cel.Md, https://www.cel.md/pages/cel-science (last visited June 17, 2019).
[164] Cel.Md, https://www.cel.md/collections/skin-care (last visited June 21, 2019).
[165] Cel.Md, https://www.cel.md/collections/congratulations-nanotech-stem-cell-face-masks-stem-cell-eye-serum-bundle (last visited June 21, 2019).
[166] Cel.Md, https://www.cel.md/collections/neck-cream-alti/promoted (last visited June 21, 2019).
[167] Cel.Md, https://www.cel.md/collections/all/send_to_checkout (last visited June 21, 2019).
[168] Cel.Md, https://www.cel.md/blogs/news/should-your-morning-evening-skincare-routine-be-different (last visited June 21, 2019).
[169] Cel MD Youtube Page, https://www.youtube.com/watch?v=CTpdK-gy_YY (last visited June 24, 2019); https://www.youtube.com/watch?v=eoEOoZyN3HI (Cel MD Shampoo and Conditioner) (last visited June 24, 2019).

279.   The Cel MD Shampoo, Conditioner, and Microstem Hair Stimulation Formula are not marked on their packaging with any patent numbers pursuant to 35 U.S.C. § 287. On information and belief, none of the other products are marked with patent numbers.

280.   On information and belief, there are either no patents on the Cel MD products, formulas, and technology, or the Cel MD Defendants have misrepresented the patents of third parties as if they were their own. On information and belief, to the extent the Cel MD Defendants were referring to the patents of third parties, those patents do not cover the technologies that the Cel MD Defendants represent that they do.

281.   These claims are designed to induce consumers to believe that there has been some level of government review of and approval of the Cel MD products through the patent application and approval process, as well as to believe that because the products or technologies are supposedly patented, they are innovative or function more effectively, and that Cel MD has a monopoly on the technology they are using in their products (which is not true if the patents are owned by another entity).

282.   In some of their advertisements, the Cel MD Defendants also tout a "clinical trial" that purports to prove the efficacy of their products. These results are referred to in Cel MD's Youtube videos, which are embedded into its website and are referred to as a "clinical trial" and "clinically proven to boost hair growth in" men and women.[170]

---

[170] Cel MD Youtube page, https://www.youtube.com/watch?v=1DMp__y_MKY (last visited June 23, 2019); see also https://www.youtube.com/watch?v=8t7v_oXnBWE (last visited June 24, 2019); https://www.youtube.com/watch?v=CTpdK-gy_YY (last visited June 24, 2019); https://www.youtube.com/watch?v=vo5jrU1Ydo0 (last visited June 24, 2019).




283. The Cel MD Defendants' Facebook video advertisements similarly represent the results to be from a "clinical trial."[171]

284. A "clinical trial" is generally understood by the public to refer to a four-phase process conducted before the FDA in which the safety and efficacy of a product is thoroughly tested, reviewed by the FDA, and ultimately tested on thousands of people to verify that they work and have no side effects.[172]

285. In fact, the results touted by the Cel MD Defendants are from a "clinical study," a privately conducted study with no controls, no involvement by the FDA, no testing for side effects, and conducted on only 88 people for sixteen weeks.[173] That clinical study was conducted without outside supervision, without disclosure of the underlying data, without peer review, and by the same people who were willing to tell their customers that their products contained super skin, super biotin, and super bacteria. *See* Ex. 1 at 3-4.

---

[171] Cel MD Facebook page,
https://www.facebook.com/stemcellmdtech/videos/387636158519820/?v=387636158519820
(last visited June 25, 2019); https://www.facebook.com/watch/?v=302877597273302
(last visited June 25, 2019); https://www.facebook.com/watch/?v=375653146380450
(last visited June 26, 2019).
[172] *See* National Institute on Aging Website, https://www.nia.nih.gov/health/what-are-clinical-trials-and-studies (comparing clinical trials to clinical studies) (last visited July 8, 2019).
[173] Cel MD Study One Pager,
https://cdn.shopify.com/s/files/1/1847/3469/files/Clinical_trial_1_pager_1.pdf?1242
22484255251360860 (last visited July 8, 2019).

286.   The "clinical study" further appears to have been conducted on two separate groups over separate eight-week periods. This fails to account for seasonal hair loss—the likely explanation for any of the Cel MD customers believing that the products work at all. Because hair shedding can vary according to time of year, temperature, humidity, and other factors, a customer who buys Cel MD at a time of year when their hair is naturally shedding may believe that the product has "worked" several months later, when in actuality they are simply shedding less hair because of changes in season, temperature, humidity, or other factors.

287.   By telling their customers that their products had been through a "clinical trial," as opposed to a self-conducted private clinical study, the Cel MD Defendants reinforced their representations that the FDA had approved their products with the false suggestion that their products had been reviewed by the government for safety and efficacy.

288.   Taken together, these representations make it clear that the Defendants' conduct here was knowing and willful. It can be no accident that the Cel MD Defendants made so many false claims about their products—or such outlandish ones. And to call their conduct vile or contemptible would be an understatement. These Defendants sell products that are ingested or applied to human skin. They knew these products were causing allergic reactions, but they did nothing to stop it. They posed as doctors, and they crossed the line into medical practice with people who suffered from cancer or who had undergone serious brain surgeries. They ignored the most basic health regulations governing these kinds of products, which are heavily regulated for a reason. They claimed to have invented non-existent sci-fi technologies, when in fact the snake oil they sell is as old as time. No one should do what the Defendants here have done without a penalty—and it should be a heavy one. The Cel MD Defendants will not be deterred from such conduct by their own good consciences. Only punitive damages can prevent them from engaging in such behavior in the future.

## CLASS ALLEGATIONS

289. Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

290. Plaintiff brings this class action pursuant to Fed. R. Civ. P. Rule 23, seeking certification of Plaintiff's claims and certain issues in this action on behalf of two different Classes (hereinafter collectively referred to as the "Plaintiff Classes" or "Classes") consisting of:

**Nationwide Class:** All consumers in the United States who, within the applicable statute of limitations period until the date notice is disseminated, purchased one of the Cel MD Products.

**California Class:** All consumers in California who, within the applicable statute of limitations period until the date notice is disseminated, purchased one of the Cel MD Products.

291. "Cel MD Products" means Cel MD Microstem Shampoo, Cel MD Microstem Conditioner, Cel MD Brow & Lash Boosting Serum, Cel MD Microstem Hair Stimulation Formula, Cel MD Microstem Dandruff Cleansing and Hair Thickening Shampoo, Cel MD Advanced Hair Supplement, Cel MD Microstem Hair Thickening Mask, Cel MD Nanotech Stem Cell Face Mask, Cel MD Eye Serum, Cel MD Neck and Decolletage Cream, Cel MD Stem Cell Rejuvenating Hand Cream, Cel MD Nail Formula, Cel MD Stem Cell Cuticle Formula, and Cel MD Stem Cell Nourishing Hand Wash, as well as any other products purporting to use stem cells or plant stem cells to improve hair and skin, or any of these products sold under different names or under the Cel or Cel MD brands.

292. Excluded from the Plaintiff Classes are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers,

directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

293.   Plaintiff reserves the right to amend or modify the class descriptions by making it more specific or dividing the class members into subclasses or limiting the issues.

294.   <u>NUMEROSITY</u>: Plaintiff is informed and believe, and on that basis allege, that the Plaintiff Classes are so numerous that individual joinder of all members would be impracticable. Based on the number of Amazon reviews of the Cel MD Products (more than 1000) and the number of views of the Cel MD advertising videos on Facebook (more than 10 million views in aggregate), it is apparent that the number of consumers of the Products would be so large as to make joinder impracticable as the Classes are comprised of thousands of consumers geographically dispersed throughout the United States. While the exact number of Class members is currently unknown, such information can be ascertained through appropriate discovery.

295.   <u>COMMONALITY</u>: Defendants' practices and omissions were applied uniformly to all members of the Plaintiff Classes, so that the questions of law and fact are common to all members of the Classes. All members of the putative Classes were and are similarly affected by having purchased and used the Products, and the relief sought herein is for the benefit of Plaintiff and members of the putative Classes.

296.   <u>PREDOMINANCE</u>: Questions of law and fact common to the Plaintiff Classes exist that predominate over questions affecting only individual members, including but not limited to:

a) whether Defendants' representations discussed above are misleading, or objectively reasonably likely to deceive;

b) whether Defendants' omissions discussed above involve facts the Defendants were obliged to disclose or facts contrary to representations by the Defendants;

c) whether the Defendants' owed consumers a duty to disclose the omitted material facts;

d) whether Defendants' alleged conduct is unlawful;

e) whether the alleged conduct constitutes violations of the laws asserted;

f) whether the Defendants' wrongful conduct was intentional or knowing;

g) whether the Defendants' wrongful conduct warrants punitive damages;

h) whether Defendants engaged in false or misleading advertising; and

i) whether Plaintiff and Class members are entitled to appropriate remedies, including restitution, damages, and injunctive relief.

297. <u>TYPICALITY</u>: The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Classes, as the claims arise from the same course of conduct by Defendants, all members of the Classes have been similarly affected by Defendants' course of conduct, and the relief sought is common.

298. <u>ADEQUACY</u>: Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Classes. Plaintiff has no interest adverse to the interests of the other Class members. Plaintiff has retained competent counsel with substantial experience in complex litigation and litigation involving scientific issues, who are committed to vigorously prosecuting this action on behalf of the Classes.

299. <u>SUPERIORITY</u>: A class action is superior to other available methods for the fair and efficient adjudication of the present controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender. The benefits of proceeding as a class

action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, are far superior than any difficulties that might be argued with regard to the management of this class action. This superiority makes class litigation superior to any other method available for the fair and efficient adjudication of these claims. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Classes would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

300.   Certification of this class action is appropriate because the questions of law or fact common to the respective members of the Plaintiff Classes predominate over questions of law or fact affecting only individual members. Certification also is appropriate because Defendants acted, or refused to act, on grounds generally applicable to the Classes, thereby making appropriate the relief sought on behalf of the Class as a whole. Further, given the large number of consumers of the Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications. Certification of Plaintiff's claims for class-wide treatment is also appropriate because Plaintiff and the Class Members can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

301.   Notice to the members of the Plaintiff Classes may be accomplished inexpensively, efficiently, and in a manner best designed to protect the rights of all Class members. Class notice can likely be directly sent to individual members of the Classes because Defendants' own records and documents will likely identify most members of the Classes and contain their contact information.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Violation of the Consumer Legal Remedies Act
### Cal. Civ. Code § 1750, *et seq.*

302.   Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

303.   Plaintiff brings this claim individually and on behalf of the Class.

304.   The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

305.   Defendants' false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of Defendants' Products for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

a. § 1770(a)(2): misrepresenting the source, sponsorship, approval, or certification of goods or services, in particular as described herein in the section titled "Omissions Regarding Reviews and Endorsements;"

b. § 1770(a)(3): misrepresenting the affiliation, connection, or association with, or certification by, another, in particular as described herein in the section titled "Omissions Regarding Reviews and Endorsements;"

c. § 1770(a)(5): representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, in particular as described herein in the sections titled "Omissions Regarding Reviews and Endorsements;" "Deceptive Brand Name and Omissions Regarding the Cel MD Brand Name;" "Misrepresentations and Omissions Regarding Plant Stem Cells;" "Representations Regarding Limited Supply;" "Omissions Regarding Side Effects;" and "Omissions Regarding Effects of Discontinuing Use of Cel MD Products;"

d. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another, in particular as described

herein in the sections titled "Misrepresentations and Omissions Regarding Plant Stem Cells;" "Omissions Regarding Side Effects;" and "Omissions Regarding Effects of Discontinuing Use of Cel MD Products;"

e. § 1770(a)(13): making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions, in particular as described herein in the sections titled "Omissions Regarding Deceptive Timers;" and "Representations Regarding Limited Supply;"

f. § 1770(a)(19): by inserting an unconscionable provision in a contract, in particular the one-sided and unconscionable provisions of the terms of service on the Cel MD Website. This unconscionability permeates any purported terms of service, and these unconscionable terms have injured the Plaintiff and the Class by deterring them from enforcing their rights, and because the Defendants have relied on these illegal, unenforceable, and unassented-to terms of service in denying requests for refunds by members of the Class.

306. Defendants profited from their sales of the falsely, deceptively, and unlawfully advertised Product to unwary consumers.

307. Plaintiff and members of the Class purchased the Products for personal use, in reliance on Defendants' false and misleading material claims described herein.

308. Pursuant to Cal. Civ. Code § 1780(d), Plaintiff has attached an affidavit of venue hereto as Exhibit 2.

309. As a result of Defendants' violations of the CLRA, Plaintiff and the Class have suffered irreparable harm and seek injunctive relief prohibiting further violations of the CLRA. Plaintiff and the Class also seek to recover their attorneys' fees and costs. Absent injunctive relief, Plaintiff may be injured by further deceptive practices by the Defendants. It is a common practice in the direct marketing industry to rename products

or sell similar or identical formulas under different brand names, meaning that the Plaintiff and the Class Members may purchase other products from Defendants without knowing the source. Indeed, the Defendants have launched dozens of products under the Cel MD brand name, often referring to them by varying names, and have further launched a second skincare line already under a different name (Organica) as well as pet products and potentially others. Absent an injunction against these practices, the Defendants here are likely to attempt to deceive the Plaintiff and the Class again with similar methods using other products or brand names.

310.   Under Cal. Civ. Code § 1782(d), a plaintiff may without prior notification file a complaint alleging violations of the CLRA that seeks injunctive relief only. If the plaintiff later sends a CLRA notification letter and the defendant does not remedy the CLRA violations within 30 days of notification, the plaintiff may amend its CLRA causes of action without leave of court to add claims for damages.

311.   Pursuant to §1782 of the CLRA and concurrently with the filing of this complaint, Plaintiff has notified Defendants in writing of the particular violations of §1770 of the CLRA and demanded Defendants rectify the actions described above by providing complete monetary relief, agreeing to be bound by their legal obligations and to give notice to all affected customers of their intent to do so.

312.   If Defendants fail to adequately respond to Plaintiff's demand within 30 days of the letter pursuant to §1782 of the CLRA, Plaintiff will amend this claim to add additional claims for relief, including claims for compensatory and punitive damages.

## SECOND CAUSE OF ACTION

### Violation of the California False Advertising Law

### Cal. Bus. & Prof. Code §§ 17500, *et seq.*

313.   Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

314.   Plaintiff brings this claim individually and on behalf of the Class.

315.   Pursuant to California Business and Professions Code § 17500, *et seq.*, it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . [or] to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

316.   Defendants have violated § 17500, *et seq.*, in particular as described herein in the sections titled "Omissions Regarding Reviews and Endorsements;" "Deceptive Brand Name and Omissions Regarding the Cel MD Brand Name;" "Misrepresentations and Omissions Regarding Plant Stem Cells;" "Representations Regarding Limited Supply;" "Omissions Regarding Side Effects;" "Omissions Regarding Deceptive Timers;" and "Omissions Regarding Effects of Discontinuing Use of Cel MD Products."

317.   Pursuant to California Business and Professions Code § 17505, "No person shall state, in an advertisement of his goods, that he is a producer, manufacturer, processor, wholesaler, or importer, or that he owns or controls a factory or other source of supply of goods, when such is not the fact, and no person shall in any other manner misrepresent the character, extent, volume, or type of his business."

318.   Defendants have violated § 17505, in particular as described herein in the sections titled "Deceptive Brand Name and Omissions Regarding the Cel MD Brand Name" and "Representations Regarding Limited Supply."

319.   Defendants misled consumers by making misrepresentations and untrue statements about their products as described herein.

320.   Defendants misled consumers by omitting material information which they were under a duty to disclose as described herein. Defendants were under a duty to disclose this material information to Plaintiff and the Class Members.

321.   Defendants knew, or by the exercise of reasonable care should have known, that their representations and omissions were untrue and misleading, and deliberately

made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class Members. In particular and *inter alia*, this is evidenced by the outlandishness of the conduct described in the section titled "Evidence of Malice, Intent, and Knowledge of Wrongful Conduct," as well as by the fake reviews and photos of customers described in the section titled "Omissions Regarding Reviews and Endorsements" and by the conduct by the Cel MD Defendants described in the section titled "Deceptive Brand Name and Omissions Regarding the Cel MD Brand Name" and elsewhere in this complaint.

322.   As a direct and proximate result of Defendants' misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property, time, and attention. Plaintiff reasonably relied upon Defendants' representations regarding their products. In reasonable reliance on Defendants' false representations, Plaintiff and other Class Members purchased the products at issue and paid more for those products than they would have had they been aware that Defendants' representations were false. Plaintiff and other Class Members ended up with Products that were overpriced, inaccurately marketed, and did not have the characteristics, qualities, or value promised by Defendants, and therefore Plaintiff and other Class Members have suffered injury in fact.

323.   Defendant's representations were material to the decision of Plaintiff and the Class Members to purchase Defendant's products, and a reasonable person would have attached importance to the truth or falsity of the representations made by Defendant in determining whether to purchase Defendant's products. With respect to the omissions by Defendant as described herein, those omissions were material and Plaintiff and the Class Members would have behaved differently if the information had been disclosed. Had Defendants disclosed the omitted information, Plaintiff and the Class Members would have been aware of it and would not have purchased the products from Defendant or would not have paid the same price for those products.

324.   Defendants advertised to Plaintiff and other Class Members, through written representations and omissions made by Defendants and their employees that the Cel MD products would be of a particular nature and quality.

325.   The misleading and false advertising described herein presents a continuing threat to Plaintiff and the Class Members in that Defendants persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendants' conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiff is entitled to injunctive relief ordering Defendants to cease their false advertising, and Plaintiff and all Class Members are entitled to restitution of the entirety of the Defendants' revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

**THIRD CAUSE OF ACTION**

**Violation of the Unfair and Fraudulent Prongs**

**of the California Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*

326.   Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

327.   Plaintiff brings this claim individually and on behalf of the Class under the "unfair" and "fraudulent" prongs of California's Unfair Competition Law, Business and Professions Code section 17200, *et seq.*, on behalf of themselves and the Classes against Defendants.

328.   As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendants' conduct. Plaintiff suffered that injury at the time of purchase, at the time of billing, and at the time of use.

329.   The Unfair Competition Law, Business & Professions Code §17200, *et seq.* ("UCL") prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising

and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

330.   Defendants committed "unfair" business acts or practices by, among other things: (1) engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiffs and members of the Classes; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and members of the Classes; and (3) engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws alleged in this Class Action Complaint.

331.   The utility of the conduct committed by Defendants and as described herein is nonexistent. There is no utility to falsely suggesting to customers that an advertising agency is a medical practice, to pretending to be doctors, to making misrepresentations about and omitting crucial facts about how products applied to the human body work, to omitting easily provided warnings about side effects, to using fake customer reviews or photos, or to making misrepresentations about limited supplies or times in which customers can purchase those products. The harm to consumers caused by this conduct, by contrast, is significant. The Cel MD Defendants' conduct described herein not only deprived the consumers of the value they were expecting to receive, it also risked their health and caused them to treat health conditions with ineffective products rather than alternative options.

332.   Defendants' conduct as described in this Complaint offends established public policies. The Defendants' conduct violated numerous statutes, as described further herein and in detail in the Fourth Cause of Action. Those statutes exist for a reason: to protect consumers from unfair marketing practices, and in many cases to protect consumers' health. It is a particularly important public policy issue to avoid these kinds of violations in products that relate to health care or that are applied to the human body given the risks of such violations.

333. Defendants' conduct as described in this Complaint is immoral, unethical, oppressive, and unscrupulous, as well as substantially injurious to Plaintiff and the Class. In particular and *inter alia*, this is evidenced by the conduct described in the section titled "Evidence of Malice, Intent, and Knowledge of Wrongful Conduct," as well as by the fake reviews and photos of customers described in the section titled "Omissions Regarding Reviews and Endorsements," by the conduct by the Cel MD Defendants described in the section titled "Deceptive Brand Name and Omissions Regarding the Cel MD Brand Name" and elsewhere herein, and by the disregard for their customer's health and well-being, for example in the sections "Misrepresentations and Omissions Regarding Plant Stem Cells;" "Omissions Regarding Side Effects;" and "Omissions Regarding Effects of Discontinuing Use of Cel MD Products," and by the widespread dishonesty present in the Cel MD Defendants' marketing materials.

334. Defendants' conduct as described in this Complaint violates the letter, spirit, and intent of the consumer protection laws. Their products amount to snake oil, marketed dishonestly and in violation of various consumer protection laws, as described herein and in the Causes of Action of this complaint.

335. As detailed herein, Defendants' unfair and/or fraudulent practices include disseminating false and/or misleading representations through their marketing and advertising.

336. Defendants are aware that the claims or omissions they have made about the Products were and continue to be false and misleading.

337. Defendants had an improper motive—profit before accurate marketing—in their practices related to their deceptive practices, as set forth herein.

338. There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein. For example, Defendants could have removed the false and misleading representations from their advertisements, provided omitted information the Plaintiffs' to avoid any deception, and

could have complied with the law rather than violating the statutes as described in Plaintiff's Fourth Cause of Action.

339.   As a direct and proximate result of Defendants' unfair or fraudulent business acts and practices and misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property, time, and attention. Plaintiff reasonably relied upon Defendants' representations regarding their products. In reasonable reliance on Defendants' false representations, Plaintiff and other Class Members purchased the products at issue and paid more for those products than they would have had they been aware that Defendants' representations were false. Plaintiff and other Class Members ended up with Products that were overpriced, inaccurately marketed, and did not have the characteristics, qualities, or value promised by Defendants, and therefore Plaintiff and other Class Members have suffered injury in fact.

340.   Defendants' representations were material to the decision of Plaintiff and the Class Members to purchase Defendants' products, and a reasonable person would have attached importance to the truth or falsity of the representations made by Defendants in determining whether to purchase Defendants' products, as described in detail herein. With respect to the omissions by the Defendants as described herein, those omissions were material and Plaintiff and the Class Members would have behaved differently if the information had been disclosed. Had Defendants disclosed the omitted information, Plaintiff and the Class Members would have been aware of it and would not have purchased the products from Defendants or would not have paid the same price for those products. Similarly, had Defendants not engaged in the unfair and fraudulent business acts or practices described in this Complaint, Plaintiff and the Class Members would not have purchased the products from the Defendants or would not have paid the same price for those products.

341.   As purchasers and consumers of Defendants' Products, and as members of the general public who purchased and used the Products and have suffered injury in fact

and lost money and property as a result of this unfair competition and unlawful conduct, Plaintiff and the Class are entitled to and bring this class action seeking all available remedies under the UCL.

342.    The unfair and unlawful competitive practices described herein presents a continuing threat to Plaintiff and the Class Members in that Defendants persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendants' conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Under Business & Professions Code § 17203, Plaintiff is entitled to injunctive relief ordering Defendants to cease their unfair competitive practices, and Plaintiff and all Class Members are entitled to restitution of the entirety of the Defendants' revenues associated with their unlawful acts and practices, or such portion of those revenues as the Court may find equitable.

## FOURTH CAUSE OF ACTION
### Violation of the Unlawful Prong
### of the California Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

343.    Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

344.    Plaintiff brings this claim under the "unlawful" prong of California's Unfair Competition Law, Business and Professions Code section 17200, *et seq.*, individually and on behalf of the Class against the Cel MD Defendants.

345.    The Unfair Competition Law, Business & Professions Code §17200, *et seq.* ("UCL") prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

346. As detailed in Plaintiff's First Cause of Action, the Cel MD Defendants' acts and practices are unlawful because they violate the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

347. As detailed in Plaintiff's Second Cause of Action, the Cel MD Defendants' acts and practices are unlawful because they violate the California False Advertising Law, Business & Professions Code §§ 17500, et seq.

348. As detailed in Plaintiff's Third Cause of Action, the Cel MD Defendants' acts and practices are unlawful because they violate the prongs of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, which prohibit any "unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising...."

349. As detailed in Plaintiff's Fifth Cause of Action, the Cel MD Defendants' acts and practices are unlawful because they violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*

350. As detailed in the section of this Complaint titled "Deceptive Brand Name and Omissions Regarding the Cel MD Brand Name," the Cel MD Defendants' acts and practices are unlawful because they violate Cal. Bus. & Professions Code § 2054, which provides that "[a]ny person who uses in any sign, business card, or letterhead, or in an advertisement... the initials 'M.D.,' or any other terms or letters indicating or implying that he or she is a physician and surgeon, physician, surgeon, or practitioner under the terms of this or any other law... is guilty of a misdemeanor."

**Wire Fraud**

**In Violation Of**

**18 U.S. Code § 1343**

351. The Cel MD Defendants' conduct here is unlawful because they have committed wire fraud and conspired to commit wire fraud in violation of 18 U.S. Code § 1343.

352.   Pursuant to 18 U.S. Code § 1343, "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice" has violated the statute.

353.   Pursuant to 18 U.S. Code § 1349, "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

354.   The Defendants here conspired to commit wire fraud and to receive money obtained from wire fraud in violation of federal law.

355.   The Defendants transmitted written communications by means of wire as part of their scheme to defraud, in particular through Facebook ads, Youtube videos, their websites, on Amazon, and through e-mail. Those transmissions included writings, signs, signals, pictures, and sounds. Those transmissions were made in interstate commerce, having originated in the Altitude Ads offices in the United Kingdom or New York and having been transmitted throughout the United States.

356.   The money obtained by the Cel MD Defendants from their customers was obtained fraudulently. As described in this complaint, the Cel MD Defendants intentionally used the "MD" abbreviation in their brand name to falsely or fraudulently suggest to their customers that they were doctors, and they illegally provided medical advice on Facebook. The Cel MD Defendants intentionally made false or fraudulent representations that their products contained plant stem cells or a plant stem cell formula or technology. The Cel MD Defendants intentionally made false or fraudulent representations that their products had been purchased and endorsed by individuals who were not actual customers, including journalists, models, their paid employees, and others. The Cel MD Defendants intentionally transmitted false or fraudulent "customer

reviews" of their products which on information and belief they wrote themselves. The Cel MD Defendants intentionally made false or fraudulent representations of limited supply to their customers, which they transmitted through Youtube and through their website. The Cel MD Defendants made numerous other misrepresentations and omissions as described throughout this complaint, including claims that their products were approved by the FDA, that they had performed a "clinical trial," that they had developed super skin, super bacteria, and super biotin, that they could rewire human skin, that they operated a human stem cell cloning facility, that they owned patents on their products, and that their products contained living plant stem cells or a plant stem cell formula. These false or fraudulent representations and omissions were made for the purpose of obtaining money, namely the purchase price of their products. The Cel MD Defendants knowingly conspired together to commit these violations and to benefit financially from this scheme.

357.   The Cel MD Defendants' actions with respect to their products as described above are in violation of 18 U.S. Code § 1343 and thus constitute unlawful business acts or practices under the UCL.

**Mail Fraud**

**In Violation Of**

**18 U.S. Code § 1341**

358.   The Cel MD Defendants' conduct here is unlawful because they have committed mail fraud and conspired to commit mail fraud in violation of 18 U.S. Code § 1341.

359.   Pursuant to 18 U.S. Code § 1341, "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of

executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing" is in violation of this statute.

360.   Pursuant to 18 U.S. Code § 1349, "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

361.   The Cel MD Defendants here conspired to commit mail fraud and to receive money obtained from mail fraud in violation of federal law.

362.   The money obtained by the Cel MD Defendants from their customers was obtained fraudulently. As described in this complaint, the Cel MD Defendants intentionally used the "MD" abbreviation in their brand name to falsely or fraudulently suggest to their customers that they were doctors, and they illegally provided medical advice on Facebook. The Cel MD Defendants intentionally made false or fraudulent representations that their products contained plant stem cells or a plant stem cell formula or technology. The Cel MD Defendants intentionally made false or fraudulent representations that their products had been purchased and endorsed by individuals who were not actual customers, including journalists, models, their paid employees, and others. The Cel MD Defendants intentionally transmitted false or fraudulent "customer reviews" of their products which on information and belief they wrote themselves. The Cel MD Defendants intentionally made false or fraudulent representations of limited supply to their customers, which they transmitted through Youtube and through their website. The Cel MD Defendants made numerous other misrepresentations and

omissions as described throughout this complaint, including claims that their products were approved by the FDA, that they had performed a "clinical trial," that they had developed super skin, super bacteria, and super biotin, that they could rewire human skin, that they operated a human stem cell cloning facility, that they owned patents on their products, and that their products contained living plant stem cells or a plant stem cell formula. These false or fraudulent representations were made for the purpose of obtaining money, namely the purchase price of their products. The Cel MD Defendants knowingly conspired together to commit these violations and to benefit financially from this scheme.

363.   The Cel MD Defendants transmitted matter or things and took or received matter or things via the Postal Service or private or commercial interstate carriers as part of their scheme to defraud, in particular by accepting return packages shipped across state lines from other states (including from the state of California), and by shipping products through the mail system to customers who had been defrauded.

364.   The Cel MD Defendants' actions with respect to their products as described above are in violation of 18 U.S. Code § 1341 and thus constitute unlawful business acts or practices under the UCL.

### Unlawful Violations of Federal Trade Commission Regulations
### Concerning Use of Endorsements and Testimonials in Advertising
### 16 C.F.R. pt. 255, *et seq.*

365.   The Cel MD Defendants' acts and practices are unlawful under the California UCL because they violate Federal regulations governing the use of endorsements and testimonials in advertising.

366.   Pursuant to 16 C.F.R. pt. 255.1(a), "an endorsement may not convey any express or implied representation that would be deceptive if made directly by the advertiser." Under 16 C.F.R. pt. 255(1)(c), "[a]dvertisers are subject to liability for false or unsubstantiated statements made through endorsements...."

367.   The term "endorsement" means "any advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness or other

identifying personal characteristics of an individual or the name or seal of an organization) that consumers are likely to believe reflects the opinions, beliefs, findings, or experiences of a party other than the sponsoring advertiser, even if the views expressed by that party are identical to those of the sponsoring advertiser." 16 C.F.R. pt. 255(b). "Endorsement" as used by the regulation means both endorsements and testimonials. *Id.* at 255(c).

368.   Endorsers include consumers who receive free products from advertisers through their marketing programs. 16 C.F.R. pt. 255, Example 8. Endorsers also include third party bloggers who are compensated in any way by advertisers, and advertisers are subject to liability for misleading or unsubstantiated representations made by paid endorsers on their websites. 16 C.F.R. pt. 255.1, Example 5.

369.   Under the regulations, advertisers have a duty to train endorsers and to monitor their statements, and to take necessary steps to halt continued publication of deceptive representations by endorsers: "In order to limit its potential liability, the advertiser should ensure that the advertising service provides guidance and training to its bloggers concerning the need to ensure that statements they make are truthful and substantiated. The advertiser should also monitor bloggers who are being paid to promote its products and take steps necessary to halt the continued publication of deceptive representations when they are discovered." 16 C.F.R. pt. 255.1, Example 5.

370.   Plaintiff incorporates by reference the Factual Allegations section of this Complaint, and in particular refers to the section relating to "Omissions Regarding Reviews and Endorsements."

371.   As that section describes, on information and belief certain unknown third-party endorsers were compensated by Defendants as part of their reviews or appearances in Cel MD video advertisements, whether via free products or direct financial compensation. Neither the Cel MD Defendants nor these endorsers disclosed this compensation in proximity to their endorsements.  These individuals were endorsers

under 16 C.F.R. pt. 255, *et seq.* and the Cel MD Defendants are liable for these omissions.

372.   Defendants knew or should have known that those third-party endorsers had not disclosed such compensation in proximity to their reviews and endorsements.

373.   On information and belief, Defendants failed to provide training or guidance to these third-party endorsers to ensure that the endorsements did not include deceptive representations. On information and belief, Defendants failed to monitor these endorsements and took no steps to halt the continued publication of these deceptive representations.

374.   Under 16 C.F.R. pt. 255.5, certain material connections between sellers of an advertised product and endorsers must be fully disclosed.

375.   16 C.F.R. pt. 255.5 states that: "When there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement (i.e., the connection is not reasonably expected by the audience), such connection must be fully disclosed. For example, when an endorser who appears in a television commercial is neither represented in the advertisement as an expert nor is known to a significant portion of the viewing public, then the advertiser should clearly and conspicuously disclose either the payment or promise of compensation prior to and in exchange for the endorsement or the fact that the endorser knew or had reason to know or to believe that if the endorsement favored the advertised product some benefit, such as an appearance on television, would be extended to the endorser."

376.   The requirement to disclose material connections between advertisers and endorsers particularly applies reviews posted on websites or blogs where there is no "inherently obvious" relationship between the advertiser and the endorser. 16 C.F.R. pt. 255.5, Example 7. To comply with the regulations, advertisers must require clear and conspicuous disclosure of material connections to endorsers on such third party websites, and must have procedures in place to monitor compliance by the endorser. *Id.*

377.   As described further in the "Omissions Regarding Reviews and Endorsements" section of this Complaint, reviews and advertisements on the Cel MD website, on Amazon, on Facebook, and on Youtube contained or constituted third-party endorsements for the Cel MD products, or were written by or made by employees of the Cel MD Defendants themselves.

378.   On information and belief, and as described in the factual background section of this Complaint, the Cel MD Defendants had a connection to these third party endorsers that might materially affect the credibility of their endorsements. The Cel MD website states as much, but buries this disclosure far away from the actual endorsements. The Cel MD Defendants further have material connections to the employees of Altitude Ads, who posed as customers and who were being compensated as employees.

379.   This material connection was not disclosed in proximity to any of the endorsements, and on information and belief was not fully disclosed even on the Cel MD website.

380.   On information and belief, the Cel MD Defendants failed to require a clear and conspicuous disclosure of this material connection and had no procedures in place to monitor compliance by the third-party endorsers.

381.   Under 16 C.F.R. pt. 255.2(c), "[a]dvertisements presenting endorsements by what are represented, directly or by implication, to be 'actual consumers' should utilize actual consumers in both the audio and video, or clearly and conspicuously disclose that the persons in such advertisements are not actual consumers of the advertised product."

382.   The Cel MD Defendants presented endorsements appearing to be from actual consumers on their website, including photographs of those purported consumers. Similarly, the Cel MD Defendants included footage in video advertisements of endorsements from individuals who purported to be actual consumers of their products.

383.   In fact, the photographs of consumers on the Cel MD website are stock photos of models, stolen photos, or in some instances are employees of Altitude Ads.

And on information and belief, the individuals in the video advertisements are paid actors and actresses and not actual consumers.

384. Defendants failed to clearly and conspicuously disclose that these photographs and videos were not actual consumers, as described in the "Omissions Regarding Reviews and Endorsements" section of this Complaint.

385. Such failure to clearly and conspicuously disclose as required by 16 C.F.R. pt. 255.2(c) was deceptive because the individuals featured in those photographs and video advertisements had healthy hair and skin which Cel MD customers would aspire to and which do not reflect the actual effects of the Cel MD products.

386. Under 16 C.F.R. pt. 255.3(a), "[w]henever an advertisement represents, directly or by implication, that the endorser is an expert with respect to the endorsement message, then the endorser's qualifications must in fact give the endorser the expertise that he or she is represented as possessing with respect to the endorsement."

387. The regulations make clear that an endorsement is deceptive and unlawful if it misrepresents the applicability and scope of an endorser's professional training and experience. 16 C.F.R. pt. 255.3, Example 1 (it is deceptive if a chemical engineer is described as an "engineer" in an endorsement of an automobile).

388. The regulations also require that an advertiser "must make clear the nature and limits of the endorser's expertise" if the endorser does not have "substantial experience" in the area. 16 C.F.R. pt. 255.3, Example 2 (a PhD or a physician without substantial experience in the area of hearing may not be referred to as a "doctor" without clarification in an endorsement of a hearing aid).

389. As described in the "Deceptive Brand Name and Omissions Regarding the Cel MD Brand Name" section of this Complaint, the Cel MD Defendants portrayed themselves as doctors by using the "MD" designation without disclosing that they did not have such expertise. They portrayed an employee writing an "article" under the name "Ryan Connor" as a "Stem Cell MD" when that person does not appear to exist and on information and belief, is not a doctor to the extent he does exist.

390. As described in the "Evidence of Malice, Intent, and Knowledge of Wrongful Conduct" section of the complaint, the Cel MD Defendants make a wide variety of inconsistent claims as to the expertise of their endorsers, claiming that their products were created by Korean individuals with varying fields of expertise, or by individuals from New York or the United States who were either doctors or stem cell experts.

391. Members of the Class were injured by this unlawful conduct and the violations of these regulations, as described in the "Omissions Regarding Reviews and Endorsements" and "Deceptive Brand Name and Omissions Regarding the Cel MD Brand Name" sections of this Complaint.

392. Defendants' actions with respect to its endorsers as described above are in violation of 16 C.F.R. pt. 255, *et seq.* and thus constitute unlawful business acts or practices under the UCL.

### Unlawful Violations of the
### Sherman Food, Drug, & Cosmetic Law
### Cal. Health & Safety Code, §§ 109875, *et seq.*

393. The Cel MD Defendants' acts and practices are unlawful under the California UCL because they violate the Sherman Food, Drug, & Cosmetic Law.

394. The Cel MD Defendants' products constitute cosmetics under the Sherman Food, Drug, & Cosmetic Law. Pursuant to Cal. Health & Safety Code § 109900, a "cosmetic" is "any article, or its components, intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to, the human body, or any part of the human body, for cleansing, beautifying, promoting attractiveness, or altering the appearance." The Cel MD Defendants' products are cosmetics under this definition because every product sold by them is applied to the human body in some form, and every product sold by them is designed to beautify, promote the attractiveness of, or alter the appearance of skin or hair.

395.   The Cel MD Defendants' products also constitute drugs under the Sherman Food, Drug, & Cosmetic Law. Pursuant to Cal. Health & Safety Code § 109925, a "drug" includes "[a]n article used or intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in human beings or any other animal" and "[a]n article other than food, that is used or intended to affect the structure or any function of the body of human beings or any other animal." The Cel MD Defendants' products are drugs under this definition because they are not food and because they are intended to affect the structure or function of hair or skin, and claim to affect such structure or function.

396.   The Cel MD Defendants' products also constitute new drugs under the Sherman Food, Drug, & Cosmetic Law. Pursuant to Cal. Health & Safety Code § 109980, a "new drug" includes "[a]ny drug the composition of which is such that the drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling or advertising thereof," or one that "has become so recognized, but that has not, otherwise than in the investigations, been used to a material extent or for a material time under the conditions." The Cel MD Defendants' products are not generally recognized among experts as being safe and effective for the conditions they are advertised to treat. The effectiveness of the individual ingredients in the Cel MD Defendants' products is not generally recognized, including ginseng and asparagus stem cells, plant stem cells generally, biotin, arginine, glycerin, and other ingredients advertised as treating hair or skin.

397.   The Cel MD Defendants' representations as described in this Complaint constitute advertisements under the Sherman Food, Drug, & Cosmetic Law. Pursuant to Cal. Health & Safety Code § 109885, an "advertisement" means "any representations, including, but not limited to, statements upon the products, its packages, cartons, and any other container, disseminated in any manner or by any means, for the purpose of inducing, or that is likely to induce, directly or indirectly, the purchase or use of any food,

drug, device, or cosmetic." The representations as described herein were likely to induce, directly or indirectly, the purchase of the Cel MD Defendants' products, which constitute drugs and cosmetics, and they did in fact induce such purchases as described in this Complaint. The representations were disseminated to the Plaintiffs and the Class using various means, including advertisements on Facebook, Youtube, Instagram, Amazon, and on the Cel MD website.

398.   Pursuant to Cal. Health & Safety Code § 110390, "[i]t is unlawful for any person to disseminate any false advertisement of any food, drug, device, or cosmetic. An advertisement is false if it is false or misleading in any particular."

399.   Pursuant to Cal. Health & Safety Code § 110395, "[i]t is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food, drug, device, or cosmetic that is falsely advertised."

400.   The Cel MD Defendants violated Cal. Health & Safety Code § 110390 and § 110395 by disseminating false and misleading advertisements, as described in detail throughout this Complaint, and by selling, delivering, and offering for sale their products which were falsely advertised.

401.   Pursuant to Cal. Health & Safety Code § 110403, "[e]xcept as otherwise provided in Section 110405, it is unlawful for a person to advertise a drug or device represented to have an effect in any of the following conditions, disorders, or diseases... (u) Conditions of the scalp, affecting hair loss, or baldness."

402.   The Cel MD Defendant's products are drugs, and thus it is unlawful for them to make representations that their products would have an effect on hair loss or baldness unless they fall within an exception. Cal. Health & Safety Code § 110405 provides a limited set of exceptions to this prohibition on such representations. Only "[a]n advertisement that is not unlawful under Section 110390" may qualify for those exceptions. As explained above, the Cel MD Defendants' representations are false or misleading in at least some particulars under Section 110390, and as such it was unlawful

for Defendants to make **any** representations on their website, their product labels, or third party websites claiming that any of their products have an effect on hair loss or baldness.

403.   Even if Defendants' representations were not false or misleading in any particular at all, on information and belief Defendants do not meet any of the itemized exceptions under Cal. Health & Safety Code § 110405 and thus it was unlawful for them to advertise their products or to represent that their products have an effect on hair loss or baldness even if those representations had been true.

404.   The California Legislature has required, through Cal. Health & Safety Code § 110403 and Cal. Health & Safety Code § 110405(b), that hair loss or baldness products should not be advertised to the general public unless their efficacy and safety have been "approved or cleared for marketing for that specific curative or therapeutic effect" through at least one of an enumerated list of potential means of review of those products. Defendants' products are marketed to the general public, and as such cannot qualify for the exception under Cal. Health & Safety Code § 110405(a), which applies where the advertisements are only disseminated to medical professionals or for educational purposes.

405.   Cal. Health & Safety Code § 110405(b) provides a list of alternate means to allow hair loss or baldness products to be advertised to the general public. As with § 110405(a), false advertisements cannot qualify under any of these means.

406.   § 110405(b) provides that: "An advertisement that a drug or device has a specific curative or therapeutic effect on a condition, disorder, or disease listed in Section 110403 if the drug or device is approved or cleared for marketing for that specific curative or therapeutic effect through any of the following means: (1)   A new drug application approved pursuant to Section 111500, or Section 505 of the federal act (21 U.S.C. Sec. 355); (2)   An abbreviated new drug application approved pursuant to Section 505 of the federal act (21 U.S.C. Sec. 355); (3)   A licensed biological product pursuant to Section 351 of the Public Health Service Act (42 U.S.C. Sec. 262); (4)   A nonprescription drug that meets the requirements of Part 330 of Title 21 of the Code of Federal

Regulations; (5)   A new animal drug application approved under Section 512 of the federal act (21 U.S.C. Sec. 360b); (6)   An abbreviated new animal drug application approved pursuant to Section 512 of the federal act (21 U.S.C. Sec. 360b); (7)   A new device application approved pursuant to Section 111550; (8)   A device premarket approval application approved under Section 515 of the federal act (21 U.S.C. Sec. 360e); (9)  A determination of substantial equivalence for a device pursuant to Section 513(f)(1) of the federal act (21 U.S.C. Sec. 360c(i)).

407.  Only subsections (1), (2), and (4) could even potentially apply to the Cel MD Defendants' hair loss products, which are not licensed biological products, are not animal drugs, and are not devices. On information and belief, the Cel MD Defendants have not received approval for their products pursuant to a new drug application. The Cel MD Defendants cannot qualify under subsection (4) because their products are not generally recognized as safe and effective, and because they do not comply with the labeling requirements under Part 330 of Title 21 of the Code of Federal Regulations.

408.  These provisions were designed by the California Legislature to protect consumers from advertisements of unsafe or ineffective products for a list of serious health conditions by requiring at least some form of government review of those products. This failure to comply means that **all** of Defendants' advertisements and representations suggesting that the products at issue have an effect on hair loss or baldness are unlawful regardless of their truth or falsity.

409.  As stated above, Defendants' products are new drugs under the Sherman Food, Drug, & Cosmetic Law. *See* Cal. Health & Safety Code § 109980. New drugs are subject to specific approval requirements, and "[n]o person shall sell, deliver, or give away any new drug" unless the statutory requirements are satisfied. Cal. Health & Safety Code § 111550. One way to satisfy the requirements is that the product is a "new drug, and a new drug application has been approved for it and that approval has not been withdrawn, terminated, or suspended under Section 505 of the federal act (21 U.S.C. Sec. 355)." Cal. Health & Safety Code § 111550(a)(1). Another is that "[t]he department has

approved a new drug or device application for that new drug or new device and that approval has not been withdrawn, terminated, or suspended." Cal. Health & Safety Code § 111550(b). The remaining methods are inapplicable to the Defendants' products, and on information and belief, Defendants have failed to satisfy the approval requirements for a new drug under the Sherman Food, Drug, & Cosmetic Law.

410.   In addition to the various forms of harm alleged throughout this complaint, which Plaintiff incorporates here by reference, this particular violation specifically harmed Plaintiff and the Class by depriving them of the important and valuable protections of this statutory scheme, by causing them to purchase products whose efficacy and safety had not been verified, and by causing them to purchase the products at issue and pay more for those products than they were worth in the absence of statutory compliance.

411.   Defendants' actions with respect to its products as described above are in violation of Cal. Health & Safety Code, §§ 109875, *et seq*. and thus constitute unlawful business acts or practices under the UCL.

**Unlawful Violations of the**

**Federal Food, Drug, and Cosmetic Act**

**21 U.S.C. § 301, *et seq*.**

412.   The Cel MD Defendants' acts and practices are unlawful under the California UCL because they violate the Federal Food, Drug, and Cosmetic Act.

413.   The Cel MD Defendants' products constitute drugs under the Federal Food, Drug, and Cosmetic Act. Pursuant to 21 U.S.C. § 321(g)(1), a "drug" includes "(C) articles (other than food) intended to affect the structure or any function of the body of man or other animals...."

414.   The Cel MD Defendants' products are advertised as affecting the structure or function of the human body, and are intended to affect the structure or function of the human body. The Cel MD Defendants advertise that their products "stimulate hair

follicles" and "promote hair growth at a cellular level."[174] They claim the ginseng stem cells in their products "[b]oost cell regeneration & stimulate collagen growth."[175] They claim that plant stem cells "[n]ourish the scalp and stimulate dormant follicles for optimum growth."[176] As described herein, they have claimed among other things that their products can rewire human skin, that they can function as a second "super skin," that the plant stem cells in their products can communicate with human cells to alter their functionality to improve hair or skin, and that they can increase the lifespan of hair follicles and cause hair to stay in the anogen phase for longer than it otherwise would.

415.   The Cel MD Defendants' products constitute new drugs under the Federal Food, Drug, and Cosmetic Act. Pursuant to 21 U.S.C. § 321(p)(1), a "new drug" includes "[a]ny drug (except a new animal drug or an animal feed bearing or containing a new animal drug) the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof, except that such a drug not so recognized shall not be deemed to be a "new drug" if at any time prior to June 25, 1938, it was subject to the Food and Drugs Act of June 30, 1906, as amended, and if at such time its labeling contained the same representations concerning the conditions of its use...."

416.   The Cel MD Defendants' products are not generally recognized among experts as being safe and effective for the conditions they are advertised to treat. The effectiveness of the individual ingredients in the Cel MD Defendants' products is not generally recognized. The FDA has previously made determinations that products constitute drugs when advertising biotin and arginine claiming the product can "prevent

---

[174] Cel.md, https://promos.cel.md/dmxcspsub2/index.php (last visited Nov. 18, 2019).
[175] Cel.md, https://promos.cel.md/emailcesflow/index.php (last visited Nov. 18, 2019).
[176] Cel.md, https://promos.cel.md/emailchm/index.php (last visited Nov. 18, 2019).

hair thinning and hair loss and promotes healthy hair."[177] The Cel MD Defendants have made the same claims about biotin and arginine in their products. The FDA has also previously made determinations that products claiming to include plant stem cells for improving skin constitute drugs.[178]

417.   Pursuant to 21 U.S.C. § 355(a), "No person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval of an application filed pursuant to subsection (b) or (j) is effective with respect to such drug."

418.   On information and belief, the Cel MD Defendants have not filed a new drug application or obtained approval of any of their products from the Food and Drug Administration. As such, it was unlawful for them to introduce or deliver their products into interstate commerce, and **all** sales of their products in the United States were unlawful.

419.   In addition to the various forms of harm alleged throughout this complaint, which Plaintiff incorporates here by reference, this particular violation specifically harmed Plaintiff and the Class by depriving them of the important and valuable protections of this statutory scheme, by causing them to purchase products whose efficacy and safety had not been verified, and by causing them to purchase the products at issue and pay more for those products than they were worth in the absence of statutory compliance.

420.   Defendants' actions with respect to its products as described above are in violation of 21 U.S.C. § 301, *et seq*. and thus constitute unlawful business acts or practices under the UCL.

---

[177] Warning Letter to Orgen Nutraceuticals, Oct. 28, 2015, *available at* https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/orgen-nutraceuticals-10282015 (last visited Mar. 12, 2020).
[178] Warning Letter to Sircuit Skin, July 19, 2016, *available at* https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/sircuit-skin-07192016 (last visited Mar. 12, 2020); Warning Letter to Annemarie Gianni Skin Care LLC, July 15, 2016, *available at* https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/annemarie-gianni-skin-care-llc-07152016 (last visited Mar. 12, 2020).

## Unlawful Violations of the
## Federal Trade Commission Act
## 15 U.S.C. § 41, *et seq.*

421.   Pursuant to 15 U.S.C. § 45(a)(1), "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."

422.   Pursuant to 15 U.S.C. § 52(a), "[i]t shall be unlawful for any person, partnership, or corporation to disseminate, or cause to be disseminated, any false advertisement—(1) By United States mails, or in or having an effect upon commerce, by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly the purchase of food, drugs, devices, services, or cosmetics; or (2) By any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase in or having an effect upon commerce, of food, drugs, devices, services, or cosmetics."

423.   Defendant's products are both drugs and cosmetics.

424.   As described throughout this Complaint and in the First, Second, and Third Causes of Action, Defendants engaged in unfair methods of competition in or affecting commerce, as well as unfair or deceptive acts or practices in or affecting commerce. The act of selling their products online satisfies the requirement of "in or affecting commerce."

425.   As described throughout this Complaint and in the First, Second, and Third Causes of Action, Defendants disseminated false advertisements online and sold their products online, which satisfies the requirement of "in or affecting commerce." Those advertisements were intended to induce and did in fact induce the purchase of Defendants' products.

426.   Defendants' actions with respect to its products as described herein are in violation of the Federal Trade Commission Act, 15 U.S.C. § 41, *et seq.* and thus constitute unlawful business acts or practices under the UCL.

**Injury from Defendants' Unlawful Actions**

427.   To extend that the unlawful conduct described above was based on misrepresentations, deception, or omission, Defendants knew, or by the exercise of reasonable care should have known, that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class Members.

428.   As a direct and proximate result of Defendants' unlawful conduct and unfair competition, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property, time, and attention. Plaintiff reasonably relied upon Defendants' representations regarding their products. In reasonable reliance on Defendants' false representations, and as a result of Defendants' unlawful conduct and unfair competition, Plaintiff and other Class Members purchased the products at issue and paid more for those products than they would have had they been aware that Defendants' representations were false or had the Defendants not engaged in the unlawful and unfair conduct described herein. Plaintiff and other Class Members ended up with Products that were overpriced, inaccurately marketed, and did not have the characteristics, qualities, or value promised by Defendants, and therefore Plaintiff and other Class Members have suffered injury in fact.

429.   As purchasers and consumers of Defendants' Products, and as members of the general public who purchased and used the Products and have suffered injury in fact and lost money and property as a result of this unfair competition and unlawful conduct, Plaintiff and the Class are entitled to and bring this class action seeking all available remedies under the UCL.

430.   The unfair and unlawful competitive practices described herein presents a continuing threat to Plaintiff and the Class Members in that Defendants persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendants' conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Under Business & Professions Code **§** 17203,

Plaintiff is entitled to injunctive relief ordering Defendants to cease their unfair competitive practices, and Plaintiff and all Class Members are entitled to restitution of the entirety of the Defendants' revenues associated with their unlawful acts and practices, or such portion of those revenues as the Court may find equitable. Plaintiff and the Class are further entitled to declaratory relief that any terms of service on the Cel MD Defendants' website is void and unenforceable because of the illegality of the Defendants' conduct and because of the illegality of the consideration provided by the Cel MD Defendants.

### FIFTH CAUSE OF ACTION
### Violation of the Racketeer Influenced and
### Corrupt Organizations Act
### ("RICO")
### 18 U.S.C. §§ 1961, *et seq.*
### (Defendants Christopher Masanto and Andrew Masanto)

431.   Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

432.   Plaintiff brings this claim individually and on behalf of the Class under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*, on behalf of themselves and the Classes against Defendants Christopher Masanto and Andrew Masanto.

433.   18 U.S.C. § 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

434.   18 U.S.C. § 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

435.   Defendants Christopher and Andrew Masanto have committed violations of these sections, as described in further detail below.

436.  Defendants Christopher and Andrew Masanto are "persons" within the meaning of 18 U.S.C. § 1961(3), which defines a person as "any individual or entity capable of holding a legal or beneficial interest in property."

437.  Altitude Ads Limited, Blooming Investments Limited, Amplify Limited, and Starky Enterprises Limited constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4), which defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The legal structure of these entities is such that Amplify Limited is a wholly owned subsidiary of Altitude Ads Limited, which is a wholly owned subsidiary of Blooming Investments Limited. Starky Enteprises Limited is now dissolved, but was a predecessor entity to Altitude Ads Limited.

438.  Defendants Christopher Masanto and Andrew Masanto operated this enterprise and these corporate entities in violation of RICO, and conducted the affairs of these corporations through illegal acts, namely the mail fraud and wire fraud described herein. On information and belief, after the formation of Altitude Ads in 2016, Christopher Masanto was the leader of the enterprise, with advice and financial assistance in operating the enterprise provided by Andrew Masanto, who had led the enterprise under its incarnation as Starky Enterprises Limited. Altitude Ads Limited created the fraudulent advertising under Christopher Masanto's direction, transmitting it via wire to the United States where Amplify Limited was the corporate entity under which Cel MD's U.S. activities were run by Andrew Masanto as the "New York branch."

439.  Andrew and Christopher Masanto agreed to facilitate the operation of an enterprise through a pattern of racketeering activity, and they did so knowingly and intentionally. The fraudulent representations and omissions are so outlandish and so prevalent in the Cel MD advertising (and in its very brand name) that it would have been impossible for either Christopher Masanto or Andrew Masanto not to have been aware of them and to have agreed to them. Indeed, Christopher Masanto has personally posed as a customer in some of the advertisements without disclosing this fact. Christopher Masanto

is the nominal head of each of the corporate entities involved, and Andrew Masanto has publicly described himself as being the co-founder of the "New York branch" of Altitude Ads.

440.   Andrew Masanto and Christopher Masanto conspired to commit and agreed to the commission of at least two predicate acts. There are at least two fraudulent advertisements in which Christopher Masanto poses as a customer, meaning he directly committed two predicate acts. Both Christopher and Andrew Masanto would have been aware of the repeated use of the Cel MD brand name on Amazon, on Facebook, on Youtube, and on the Cel.MD website. On information and belief, they were aware of and agreed to the commission of the numerous other predicate acts of mail and wire fraud as well, which is implied by the small number of employees in the company meaning that Christopher Masanto as CEO would necessarily have been aware of the details of their activities, by the close relationship between Andrew and Christopher Masanto as brothers, and by the descriptions of their responsibilities on their LinkedIn profiles and elsewhere.

441.   18 U.S.C. § 1961(1) defines racketeering activity to include "any act which is indictable under any of the following provisions of title 18, United States Code... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)...."

442.   The Cel MD Defendants have committed both wire and mail fraud, as explained further herein in the Fourth Cause of Action. These predicate acts occurred from at least September 27, 2017 through the present, and were reflected in the Defendants' website, through e-mail marketing, through their numerous Facebook and Youtube videos and advertisements uploaded throughout this period (whose specific dates are referenced on each video or page cited herein, and whose period of advertising on Facebook can be determined from the Cel MD Defendants' internal Facebook accounts or the dates of the user comments and are incorporated here by reference), on their Amazon pages which have been operative since at least July 5, 2018 based on customer reviews, and elsewhere. The specific dates for statements on the Defendants'

websites and their date of publication is expected to be contained within the metadata of internal documents available to the Cel MD Defendants. The Defendants first launched their Facebook page publicly under the fraudulent name "Stem Cell MD" on September 27, 2017, which is the earliest currently known predicate act. The labels and packaging of the Cel MD Products have contained fraudulent statements about containing a plant stem cell formula from at least April 2018 to the present, and each shipment of products containing these statements constitutes a predicate act. These acts of wire and mail fraud were committed willfully and intentionally as described further herein, and were made in furtherance of the scheme and common course of conduct in that they were designed to defraud Cel MD customers of money and property.

443.    These predicate acts further include the acts described in the "Evidence of Malice, Intent, and Knowledge of Wrongful Conduct" section of this complaint.

444.    The predicate acts include:

- Fraudulent representations that the Cel MD Defendants used a plant stem cell formula or plant stem cell technology in their product, or that their products contained ginseng or asparagus stem cells, which were communicated by both wire and mail;

- Fraudulent representations that the Cel MD Defendants had created super skin, which were communicated by wire;

- Fraudulent representations that the Cel MD Defendants had created super biotin, which were communicated by wire;

- Fraudulent representations that the Cel MD Defendants had created super bacteria, which were communicated by wire;

- Fraudulent representations that the Cel MD Defendants were operating a human stem cell cloning facility, which were communicated by wire;

- Fraudulent representations that there was a limited supply of their products, which were communicated by wire;

- Fraudulent representations about the nature or qualifications of the doctors or experts who created the products, which were communicated by wire and by mail;

- Fraudulent representations about government approvals of the products by the FDA or through patents or clinical trials, which were communicated by wire;

- Fraudulent representations about the biological and scientific nature of plant stem cells, peptides, exosomes, and the functionality of the Cel MD products, which were communicated by wire and by mail;

- Fraudulent claims that their products could regrow hair, rewire or rejuvenate skin, or otherwise alter the functionality of the human body, which were communicated by wire and by mail;

- Fraudulent use of the letters "MD" to suggest that the products were being sold by doctors or a medical practice, which were communicated by wire and by mail;

- Fraudulent use of stock photos or employees labeled as customers, which were communicated by wire;

- Fraudulent representations about the strength of customer reviews, which were communicated by wire;

- Fraudulent countdown timers, which were communicated by wire;

- Fraudulent statements that their products utilized nanotechnology or a nanotech formula, which were communicated by wire;

- Fraudulent statements about the lack of side effects of their products, which were communicated by wire;

- The act of mailing the Cel MD products to customers which occurred from late 2017 to the present by third party vendors at the direction of the Cel MD Defendants as part of an artifice or scheme to defraud.

445.   These acts constitute a pattern of racketeering activity, defined in 18 U.S.C. § 1961(1) as "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." There are countless acts individual acts of wire and mail fraud identified here which occurred from at least September 27, 2017 to the present, including likely hundreds of separate advertisements, hundreds of separate pages on the Cel MD website, dozens of products, and mail fraud committed by the shipment of fraudulently advertised snake oil products to thousands upon thousands of customers all across the United States. These acts were related to one another in that all had a common purpose to defraud potential customers of Cel MD, that the victims were directed to the Cel.MD website or to Amazon, that the participants were the same, and that the methods were the same or similar. These acts occurred over a period of more than two years, and they are currently ongoing in that on information and belief, many individuals are still being billed and shipped products on a monthly basis for products they purchased based on past acts of fraud, the products are still available for sale on Amazon and the Cel.md website under the deceptive brand name, and many of the misrepresentations are actively being made to new customers.

446.   On information and belief, additional predicate acts may have occurred far earlier and may be uncovered in discovery, particularly through Andrew Masanto's earlier cosmetics company, his other internet marketing activities as a "super affiliate," and the earlier activities of Altitude Ads. Christopher Masanto has been the CEO of Altitude Ads since April 2016, and Andrew Masanto has been involved in internet marketing continuously since at least November 2008, and their use of the practices described herein likely began well before Cel MD was launched.

447.   In addition, Altitude Ads appears to be a continuation of a racketeering enterprise operated by Andrew Masanto under a now-defunct corporation called Starky Enterprises Limited, formed in 2008 and dissolved by Andrew Masanto on July 5, 2016.

This occurred shortly after the formation of Altitude Ads Limited and Blooming Investments Limited by Christopher Masanto on June 8, 2016. The application to strike Starky Enterprises Limited from the corporate registry was made on April 9, 2016, just before the registration for the domain altitudeads.com which occurred on April 26, 2016.

448.  Starky Enterprises Limited described itself as specializing in "in online internet and affiliate marketing."[179] It claimed to be involved in promoting "health products."[180] Among the means by which it promoted these products included "less traditional and innovative online solutions (disclosed only upon meeting)."[181] On information and belief, Christopher Masanto was involved in Starky Enterprises Limited along with Andrew Masanto. On information and belief, Starky Enterprises Limited was a predecessor entity to Altitude Ads Limited, and was involved in the fraudulent creation, promotion, and advertising of similar hair, skin, and other health products. Plaintiff expects that additional predicate acts may be uncovered in discovery.

449.  These acts affected interstate commerce, in that the shipments crossed state lines and the advertisements were send from the United Kingdom to the United States and transmitted via wire across the country, resulting in purchases of the Cel MD products through interstate commerce which were sent via United States mail.

450.  Andrew Masanto is a resident of New York, and at least some of his actions took place within the territorial limits of the United States.

451.  Christopher Masanto is a resident of the United Kingdom. He is the CEO and Secretary of Amplify Limited, a Delaware Corporation, and he registered that company to do business specifically in California and Florida. Along with Andrew Masanto, he directed the United States operations of the enterprise.

---

[179] Archive.org copy of starkyenterprises.com, https://web.archive.org/web/20160307042649/http://starkyenterprises.com/ (last visited Mar. 12, 2020).
[180] *Id.*
[181] *Id.*

452.    The RICO enterprise at issue here consists of two corporations based in the United Kingdom, a predecessor UK company, and one corporation based in the United States. The enterprise engaged in, or affected in a significant way, commerce in the United States, namely because the mail and wire fraud was directed at United States residents, was committed in the United States, was designed to defraud individuals within the United States, and the fraudulent advertising and other materials were intentionally circulated specifically in the United States as the target market. The Cel MD Defendants further claim online that their products are "Made in the USA."

453.    The predicate acts took place in the United States because the mail and wire fraud involved transmission into the United States and targeted victims in the United States, who were defrauded within the territorial limits of the United States.

454.    The injuries took place entirely within the United States, where the products were sold, manufactured, and shipped, and where the fraudulent advertising and other materials were viewed and relied upon.

455.    The RICO violations alleged here have caused harm to a specific business or property interest. In particular, as a result of the misrepresentations and omissions described herein, Plaintiff reasonably relied upon Defendants' representations regarding their products. In reasonable reliance on Defendants' false representations, and as a result of the RICO violations, Plaintiff and other Class Members purchased the products at issue and paid more for those products than they would have had they been aware that Defendants' representations were false or had the Defendants not engaged in the unlawful conduct described herein. Plaintiff and other Class Members ended up with Products that were overpriced, inaccurately marketed, and did not have the characteristics, qualities, or value promised by Defendants, and therefore Plaintiff and other Class Members have suffered specific harm to a property interest, the money they paid to the Cel MD Defendants.

456.    The RICO violations here have caused concrete financial loss. In particular, as described above, money was paid by Plaintiff and members of the Classes to the Cel

MD Defendants in reliance on their misrepresentations and omissions. Plaintiff and the Class Members were overcharged for those products relative to their actual value, and the value was substantially inflated by the various misrepresentations and omissions as described further herein.

457. The RICO violations were both the but-for cause and the proximate cause of these injuries. But for the violations, as described herein, Plaintiff and the Class Members would not have purchased the products or would not have paid an inflated price for them. The violations were the proximate cause of these injuries because the violations led directly to the injuries—the fraudulent representations and omissions were designed to induce customers to purchase the Cel MD products, and it was because of these representations and omissions that the customers made their purchases.

458. Because of these violations and pursuant to 18 U.S.C. § 1964(c) and 1964(d), Defendants Andrew Masanto and Christopher Masanto are liable to Plaintiff and the Class Members for three times the damages Plaintiff and the Class Members have sustained, plus the cost of this suit, including reasonable attorneys' fees.

## SIXTH CAUSE OF ACTION
### Violation of Various State Consumer Protection Laws
### On Behalf of the Nationwide Class

459. Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

460. Plaintiff brings this claim for deceptive acts and practices in violation of various states' consumer protection statutes against the Cel MD Defendants on behalf of the Nationwide Class.

461. The Cel MD Defendants have engaged in deceptive acts and unfair practices that have caused actual damages to Plaintiff and the Nationwide Class, as described herein, including the misrepresentations and omissions described with respect to the marketing, advertising, promotion, packaging, and sale of the Cel MD products.

462. The Cel MD Defendants' deceptive and unfair trade practices have been carried out in the course of conducting the Cel MD Defendants' business, trade, and commerce.

463. The Cel MD Defendants' acts—including their intentional efforts to mislead consumers regarding the benefits and effectiveness of the Cel MD Products—are willful, unfair, unconscionable, deceptive, contrary to public policy and injurious to consumers.

464. The Cel MD Defendants' false, deceptive and misleading statements and omissions would be material to any reasonable consumer's decision whether to buy a Cel MD product.

465. Any objectively reasonable consumer acting reasonably in the circumstances would have been deceived by the Cel MD Defendants' acts and practices.

466. The Cel MD Defendants' acts are unconscionable and actuated by bad faith, lack of fair dealing, actual malice, are accompanied by a wanton and willful disregard for consumers' well-being, and are motivated solely by the desire for financial gain.

467. As a direct and proximate result of the Cel MD Defendants' deceptive practices, Plaintiff and the Nationwide Class have sustained actual damages.

468. Plaintiff and the Nationwide Class demand damages, attorneys' fees and costs, and any other relief to which they may be entitled.

469. Plaintiff's claims are representative of similar claims available to non-California Nationwide Class members under the laws of other states, which also are amenable to further subclass treatment. Such laws may include, but are not limited to: Ala. Code § 8-19-1 *et seq.*; Alaska Stat. § 45.50.471 *et seq.*; Ariz. Rev. Stat. Ann. § 44-1521 *et seq.*; Ark. Code Ann. § 4-88-101 *et seq.*; Cal. Civil Code § 1750 *et seq.* and Cal. Bus. & Prof. Code § 17200 *et seq. &* 17500 *et seq.*; Colo. Rev. Stat. § 6-1-101 *et seq.*; Conn. Gen. Stat. § 42-110a *et seq.*; Del. Code Ann. tit. 6 § 2511 *et seq.* & 2580 *et seq.*; D.C. Code Ann. § 28-3901 *et seq.*; Fla. Stat. § 501.201 *et seq.*; Ga. Code Ann. § 10-1-390 *et seq.*; Haw. Rev. Stat. § 480-1 *et seq.*; Idaho Code Ann. § 48-601 *et seq.*; 815 Ill. Comp. Stat. 505/1 *et seq.*; Ind. Code Ann. § 24-5-0.5-1 *et seq.*; Iowa Code § 714.16 *et seq.*; Kan.

Stat. Ann. § 50-623 *et seq.*; Ky. Rev. Stat. Ann. § 367.110 *et seq.*; La. Rev. Stat. Ann. § 51:1401 *et seq.*; Me. Rev. Stat. Ann tit. 5, § 205-A *et seq.*; Md. Code Ann., Com. Law § 13-101 *et seq.*; Mass. Gen. Laws ch. 93A, § 1 *et seq.*; Mich. Comp. Laws § 445.901 *et seq.*; Minn. Stat. § 831 and § 325F.67 *et seq.*; Miss. Code Ann. § 75-24-1 *et seq.*; Mo. Ann. Stat. § 407.010 *et seq.*; Mont. Code Ann. § 30-14-101 *et seq.*; Neb. Rev. Stat. Ann. § 59-1601 *et seq.*; Nev. Rev. Stat. Ann. § 598.0903 *et seq.*; N.H. Rev. Stat. Ann. § 358-A:1 *et seq.*; N.J. Stat. Ann. § 56:8-1 *et seq.*; N.M. Stat. § 57-12-1 *et seq.*; N.Y. Gen. Bus. Law § 349 *et seq.* and § 350 *et seq.*; N.C. Gen. Stat. § 75-1.1 *et seq.*; N.D. Cent. Code § 51-12-01 *et seq.* and § 51-15-01 *et seq.*; Ohio Rev. Code Ann. § 1345.01 *et seq.*; Okla. Stat. tit. 15, § 751 *et seq.*; Or. Rev. Stat. § 646.605 *et seq.*; 73 Pa. Stat. Ann. §§ 201-1 *et seq.*; R.I. Gen. Laws §§ 6-13.1-1 *et seq.*; S.C. Code Ann. § 39-5-10 *et seq.*; S.D. Codified Laws § 37-24-1 *et seq.*; Tenn. Code Ann. § 47-18-1091 *et seq.*; Tex. Bus. & Com. Code Ann. § 17.41 *et seq.*; Utah Code Ann. § 13-11-1 *et seq.*; Vt. Stat. Ann. tit. 9, § 2451 *et seq.*; Va. Code Ann. §§ 59.1-196 *et seq.*; Wash Rev. Code § 19.86.010 *et seq.*; W. Va. Code § 46A-6-101 *et seq.*; Wis. Stat. § 100.18 *et seq.*; and Wyo. Stat. Ann. §§ 40-12-101 *et seq.*

## SEVENTH CAUSE OF ACTION
### Aiding and Abetting

470.   Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

471.   To the extent the tortious conduct alleged was not personally committed by him, Defendant Andrew Masanto aided and abetted the tortious conduct alleged in this complaint to have been committed by the other Defendants, including Causes of Action One through Five.

472.   Defendant Andrew Masanto knew that the tortious conduct alleged in this complaint constituted a breach of duties to Plaintiffs. He was aware at a minimum that Christopher Masanto and the employees of Altitude Ads, a company he co-founded, were not medical doctors. Given his self-professed knowledge of cosmetics and Internet

marketing, on information and belief Andrew Masanto participated in and was fully aware of the conduct by the other Defendants, and was aware that they were lying to their customers and omitting crucial information. Defendant Andrew Masanto thus had actual knowledge of the wrongful conduct described herein.

473.   Defendant Andrew Masanto gave substantial assistance or encouragement to the other Defendants in their actions, on information and belief at least by providing his expertise in Internet marketing and in cosmetics. Defendant Andrew Masanto further assisted in founding Altitude Ads and was in charge of the New York branch of the company during the period of the Cel MD launch.

474.   Defendant Andrew Masanto participated in this conduct for personal gain or in furtherance of his own financial advantage. On information and belief, Defendant Andrew Masanto benefited financially either as an investor or through other compensation, or by financially benefiting his family members.

475.   Defendant Andrew Masanto is thus jointly and severally liable for the conduct alleged herein by Defendants Christopher Masanto, Altitude Ads Limited, Blooming Investments Limited, and Amplify Limited.

## EIGHTH CAUSE OF ACTION
### Civil Conspiracy

476.   Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

477.   For the purposes of this cause of action, Defendant Andrew Masanto is alleged to have conspired with the other defendants (Defendants Christopher Masanto, Altitude Ads Limited, Blooming Investments Limited, and Amplify Limited) and participated in the conspiracy as a group.

478.   Defendants Christopher Masanto, Andrew Masanto, Altitude Ads Limited, Blooming Investments Limited, and Amplify Limited ("the Conspirators") formed a conspiracy to commit the torts described herein.

479.  On information and belief, there was an agreement among the Conspirators to commit those wrongful acts and to cooperate in furtherance of the commission of those wrongful acts. This agreement is implied by the conduct of the conspirators. The nature of the acts of the Cel MD Defendants implies a conspiracy because as described herein, the conduct is so outrageous that it could only have been done intentionally, as well as because the misrepresentations and omissions could not have been made without knowledge and an intent to deceive the Class. Andrew Masanto's background and knowledge of both cosmetics and Internet marketing further implies that his conduct in co-founding Altitude Ads was part of a plan to utilize that background to deceive the Cel MD customers. The relationship between the parties, namely that Andrew Masanto and Christopher Masanto are brothers and that they co-founded Altitude Ads further implies this conspiracy. The interests of Andrew Masanto and Christopher Masanto, namely the financial benefits obtained from deceiving the Cel MD customers, further imply a conspiracy.

480.  Defendant Andrew Masanto was aware of the conduct of the other Conspirators, specifically because he was in charge of the New York branch of Altitude Ads which was responsible for their business in the United States, and which in the time period he is known to have been managing that business appears to have consisted primarily or only of Cel MD. Defendant Andrew Masanto agreed with the other Conspirators that this conduct would be committed and intended that it be committed. It was in Defendant Andrew Masanto's interests that this conduct be committed because on information and belief, he financially benefited, and because if Christopher Masanto is a family member, then the conduct benefited Andrew Masanto's family. Defendant Andrew Masanto acted in furtherance of his own financial gain because on information and belief, as a co-founder of Altitude Ads he was entitled to some form of financial compensation.

481.  On information and belief, Defendant Andrew Masanto was not an employee of the other Defendants, but acted in furtherance of the conspiracy by

managing the New York branch of Altitude Ads as it was ramping up its sales of Cel MD, by hiring employees on behalf of Altitude Ads, by operating and accessing the Altitude Ads LinkedIn account for that purpose, and, on information and belief, by providing Christopher Masanto and the other Defendants his expertise in cosmetics and Internet marketing for the purpose of creating and marketing Cel MD.

482.   The remaining Conspirators acted in furtherance of the conspiracy by creating, marketing, and selling Cel MD, and by committing the torts described herein.

483.   Plaintiff and the Class were harmed by the wrongful conducted committed by the Conspirators as part of the conspiracy, as described throughout this Complaint in the Causes of Action underlying the Conspiracy claim. As a direct and proximate result of the Conspirators' wrongful conduct, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property, time, and attention. In reasonable reliance on the Conspirators' misrepresentations, Plaintiff and other Class Members purchased the products at issue and paid more for those products than they otherwise would have. In turn, Plaintiff and other Class Members ended up with Products that were overpriced, inaccurately marketed, and did not have the characteristics, qualities, or value promised by Defendants, and therefore Plaintiff and other Class Members have suffered injury in fact. Defendant's representations were material to the decision of Plaintiffs and the Class Members to purchase Defendant's products, and a reasonable person would have attached importance to the truth or falsity of the representations made by Defendant in determining whether to purchase Defendant's products.

484.   Each of the Conspirators listed in this Cause of Action is thus jointly and severally liable for the conduct committed by the conspiracy.

## PRAYER FOR RELIEF

Wherefore, Plaintiff demands judgment as follows:

A.     An order declaring that this action may be maintained as a class action pursuant to Fed. R. Civ. Proc. 23, certifying this case as a class action, appointing Plaintiff as representative of the Class, and designating their attorneys as Class Counsel;

B.     Declaratory judgment that Defendants' actions are unfair and unlawful, and that any terms of service agreement on the Defendants' website is invalid and unenforceable;

C.     An award of injunctive relief as permitted by law or equity including an order prohibiting Defendants from engaging in the unlawful and tortious acts described above, as well as prohibiting Defendants from selling the Cel MD products, prohibiting them from charging any further subscription payments to members of the Class, and ordering Defendants to remove any ingredients from products they sell that may cause an allergic reaction;

D.     A finding that such injunction constitutes public injunctive relief, has resulted in the enforcement of an important right affecting the public interest and otherwise meets the requirements of California Code of Civil Procedure § 1021.5, and an award of attorney's fees and costs pursuant to § 1021.5;

E.     For judgment for Plaintiff and the Class on their claims in an amount to be proven at trial, for economic, monetary, consequential, compensatory or statutory damages caused by Defendants' practices, along with punitive damages;

F.     For restitution and/or other equitable relief, including without limitation disgorgement of all revenues, profits, and unjust enrichment that Defendants obtained from Plaintiff and the Class as a result of its unlawful, unfair, and deceptive business practices described herein;

G.     As to Defendants Andrew Masanto and Christopher Masanto, for damages of three times the damages Plaintiff and the Class Members have sustained, plus the cost of this suit, including reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) and (d);

H.     An award of attorney's fees and costs;

I.     For pre-judgment and post-judgment interest as provided for by law or allowed in equity; and

J.     Such other and further relief as is necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. Proc. 38(b), Plaintiff demands a trial by jury on all issues so triable.

DATED this 17th day of March, 2020.

Dated this 17th Day of March, 2020

/s/ Kevin Kneupper /s/

Kevin Kneupper